822 So.2d 1275 (2002)
Laurie Adele SCHUETTE, Petitioner,
v.
STATE of Florida, Respondent.
No. SC01-1254.
Supreme Court of Florida.
June 20, 2002.
*1276 Carey Haughwout, Public Defender, and Benjamin W. Maserang, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, FL, for Petitioner.
Robert A. Butterworth, Attorney General, Celia Terenzio Bureau Chief, West Palm Beach, and Don M. Rogers, Assistant Attorney General, West Palm Beach, FL, for Respondent.
PARIENTE, J.
We have for review State v. Schuette, 782 So.2d 935 (Fla. 4th DCA 2001), a decision from the Fourth District Court of Appeal that certified conflict with the decision from the Fifth District Court of Appeal in Cheek v. State, 700 So.2d 731 (Fla. 5th DCA 1997), on the issue of whether restitution must be ordered for damages arising out of an automobile accident that occurs while the defendant is driving with a suspended license. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons that follow, we quash the Fourth District's decision in Schuette, which reversed the trial court's order denying restitution, and approve the Fifth District's decision in Cheek.

BACKGROUND
After an automobile accident that resulted in injuries to the victim, petitioner Laurie *1277 Schuette was charged with and convicted of driving with a suspended license and leaving the scene of an accident involving an injury. See Schuette, 782 So.2d at 936. During the sentencing hearing, the State requested the trial court to order restitution for the victim's injuries. See id. The record indicates only that Schuette's license suspension resulted from her failure to provide proof of insurance and failure to appear for two traffic court hearings.[1] The trial court noted that to order restitution, a nexus must exist between the crime and the injuries. See Schuette, 782 So.2d at 936. Finding that "the fact that Schuette did not have a valid driver's license did not create the victim's injuries," the trial court concluded that there was no nexus between the criminal act and the injury suffered and, therefore, the court denied restitution. Id. The State appealed, arguing that the offense of driving with a suspended license could and should support an order of restitution. See id.
The Fourth District initially stated that "[i]t is undisputed that restitution could not be ordered in [sic] from the conviction for leaving the scene of an accident," citing to this Court's decision in State v. Williams, 520 So.2d 276 (Fla.1988). Id. at 936 n. 1. As to the issue of whether restitution could be imposed for the offense of driving with a suspended license, the Fourth District acknowledged that before 1993, the Second District Court of Appeal held "that restitution could not be imposed against a suspended driver who caused an accident because the fact that the driver's license was suspended was not causally related to the crash." Schuette, 782 So.2d at 936-37 (citing Ochoa v. State, 596 So.2d 515 (Fla. 2d DCA 1992); Stewart v. State, 571 So.2d 485 (Fla. 2d DCA 1990)). However, the Fourth District observed that the Legislature had amended the restitution statute in 1993 "in order to expand the criteria for ordering restitution." Id. at 937.
The Fourth District also cited to our decision in Glaubius v. State, 688 So.2d 913, 915 (Fla.1997), which required that "before restitution may be imposed, the court must find that the loss or damage is causally connected to the offense and bears a significant relationship to the offense." Schuette, 782 So.2d at 936 (citing Glaubius, 688 So.2d at 915). In reversing the trial court's order denying restitution, the Fourth District concluded that restitution was required in this case because "Schuette's driving without a legal right began the criminal episode during which the accident occurred, and but for her driving with a suspended license, the victim would not have incurred damages." Id. at 937 (citing Glaubius, 688 So.2d at 915) (emphasis supplied).[2] The Fourth *1278 District certified conflict with the Fifth District's opinion in Cheek, which held that restitution could not be imposed for damages arising from an accident in which the defendant was driving with a suspended license at the time of the accident. See Schuette, 782 So.2d at 937.

ANALYSIS
In this case, the State sought restitution for the victim's medical bills and lost wages arising from an automobile accident that occurred while the defendant was driving with a suspended license. The legal issue presented is whether the trial court is required to order restitution for damages arising out of an automobile accident based on the underlying offense of driving with a suspended license where the State does not present any evidence of a causal relationship between the act of driving without a license and the accident that resulted in damages or loss.
Until 1993, the restitution statute, section 775.089, provided in pertinent part:
(1)(a) In addition to any punishment, the court shall order the defendant to make restitution to the victim for damage or loss caused directly or indirectly by the defendant's offense, unless it finds clear and compelling reasons not to order such restitution.
§ 775.089, Fla. Stat. (Supp.1992). In 1993, the Legislature amended this subsection of 775.089 by adding subsection (1)(a)(2), so that the current version of the statute provides in pertinent part:
(1)(a) In addition to any punishment, the court shall order the defendant to make restitution to the victim for:
1. Damage or loss caused directly or indirectly by the defendant's offense; and
2. Damage or loss related to the defendant's criminal episode, unless it finds clear and compelling reasons not to order such restitution.
§ 775.089(1)(a), Fla. Stat. (2001).[3] The State has the burden of establishing causation, *1279 see Glaubius, 688 So.2d at 915, as well as the "burden of demonstrating the amount of loss sustained by the victim as a result of the offense." § 775.089(7), Fla. Stat. (1999). Further, the State must establish both causation and the amount of loss or damages by a preponderance of the evidence. See Glaubius, 688 So.2d at 915.
The Second District in Ochoa, 596 So.2d at 515, reversed an award of restitution for damages caused by the automobile accident where the defendant was charged with both leaving the scene of an accident with injury or death and driving without a valid driver's license. The Second District reasoned that the "damages were not sufficiently related to either of the offenses of which he was convicted." Id. (emphasis supplied). Similarly, in Stewart, 571 So.2d at 487, the Second District vacated a trial court's restitution order stemming from the defendant's convictions for driving with a suspended license and leaving the scene of an accident. The Second District concluded that "the suspension of the petitioner's license was an existing condition, not the cause of the accident. Because the driving with a suspended license was not the cause of the accident, it had no relationship to the damages suffered by the other driver." Id. at 486 (emphasis supplied).
In Cheek, the Fifth District quashed a trial court's order of restitution for damages arising from an automobile accident "because the fact that [the defendant's] license was suspended was not causally related to the crash." 700 So.2d at 731 (emphasis supplied). Judge Sharp dissented, and relying on our opinion in J.O.S. v. State, 689 So.2d 1061, 1064 (Fla. 1997), reasoned that as a result of the 1993 amendment, the restitutionary obligation was expanded to include damages or loss "significantly related to the defendant's offense." Cheek, 700 So.2d at 732 (Sharp, J., dissenting) (emphasis supplied). Thus, Judge Sharp concluded that restitution was required because "Cheek's criminal episode began when he started driving without a valid license," and the damages to the other vehicle were significantly related to the criminal episode. Id.
In order to resolve the conflict issue presented in this case, we begin by reviewing the case law from this Court. The Court first addressed the requirements for restitution in criminal cases in J.S.H. v. State, 472 So.2d 737, 737 (Fla.1985), where the trial court ordered a juvenile defendant to pay restitution for the damage he caused while attempting to steal radio equipment from a boat.[4] The Court explained that the damage for which the trial court orders restitution need not be directly encompassed within the legal elements of an offense, but it must "bear a significant relationship to the convicted offense." Id. at 738 (emphasis supplied). The Court concluded that the damage to the boat, including some severed wires and a hole cut into the hull, was a direct result of the attempted theft of the radio equipment and was necessary for the commission of the crime. See id. Therefore, the Court held that a significant relationship existed between the damages and the offense, and thus the trial court properly ordered restitution. See id.
*1280 In Williams, 520 So.2d at 277, the Court interpreted section 775.089(1)(a), Florida Statutes (1985), the predecessor statute to the present statute, which provided that the court "shall order the defendant to make restitution to the victim for damage or loss caused directly or indirectly by the defendant's offense." In Williams, the defendant was convicted of leaving the scene of an accident resulting in personal injury, and the trial court ordered her to pay restitution as a condition of probation. Id. Although agreeing that damages resulted from the accident, Williams argued that no damages were caused, either directly or indirectly, by her offense of leaving the scene of an accident. See id. The State maintained that leaving the scene was just one link in the chain of events in which the injuries took place. See id. Consequently, the State argued that the events consisting of an accident in which people were injured, and Williams' hasty departure, formed a causal chain linking the offense of leaving the scene to the injuries sustained in the accident. See id.
In rejecting the State's argument, the Court stated:
The damages arising out of the accident would have occurred with or without Williams committing the offense of leaving the scene of an accident. Those damages transpired independent of that crime. This Court, in J.S.H., allowed restitution in a case where there was a significant relationship between the damages and the offense. This significant relationship test does not replace the causal relationship required by section 775.089(1)(a). Rather, we believe that the significant relationship test enunciated in J.S.H. should work in conjunction with the causation required by the statute.

Id. at 277 (emphasis supplied). Because the damages arising from the accident were not caused by the act of leaving the scene of the accident, and therefore bore no relationship to the crime for which the defendant was convicted, the Court approved the lower court decision that struck the restitution award as a condition of probation. See id. at 278.
In Glaubius, 688 So.2d at 914, a case decided after the 1993 amendment, the Court addressed the issue of whether investigative costs incurred by a victim are properly included in an award of restitution. The manager of a retail store ordered an internal investigation of a store employee because the manager suspected the employee of committing theft. See id. The employee was later convicted of grand theft, and as part of his sentence, the trial court ordered the employee to pay restitution for the costs of the internal investigation. See id. Although Glaubius involved the 1993 statute, the Court did not discuss the effect of the 1993 amendment on its analysis, but instead, referred to our 1988 decision in Williams, and stated that:
[T]o order restitution under the statute, the court must find that the loss or damage is causally connected to the offense and bears a significant relationship to the offense. Further, under the statute, the State must establish these factors by a preponderance of the evidence.
Glaubius, 688 So.2d at 915. The Court held that there was a causal connection between the defendant's offense and the injury because "but for" the defendant's criminal misconduct, the investigative costs would not have been incurred. See id. The Court also held that the investigative costs were "significantly related" to the misconduct. See id. Thus, Glaubius did not alter the analysis previously applied by this Court in the Williams and J.S.H. opinions.
Likewise, in J.O.S., 689 So.2d at 1064, the Court once again reviewed the requirements *1281 for an award of restitution and reaffirmed the principle articulated in J.S.H. and Williams that the "significant relationship" test works in conjunction with the causal relationship test set forth in section 775.089(1)(a).[5] The Court further noted in dicta that the 1995 version of section 775.089(1)(a)(2) "includes an additional restitutionary obligation for `damage or loss related to the defendant's criminal episode' which was not present in the 1985 version of the statute." Id. at 1064 n. 10.[6] However, the Court did not change the two-pronged analysis previously adopted in both Williams and Glaubius.
More recently, although not in the context of restitution, in Eversley v. State, 748 So.2d 963, 966-67 (Fla.1999), the Court explained the application of causation principles to criminal statutes and the relationship between "but for" causation and proximate cause:
Causation consists of two distinct subelements. As legal scholars have recognized, before a defendant can be convicted of a crime that includes an element of causation, the State must prove beyond a reasonable doubt that the defendant's conduct was (1) the "cause in fact" and (2) the "legal cause" (often called "proximate cause") of the relevant harm.
In order to establish that a defendant's conduct was the "cause in fact" of a particular harm, the State usually must demonstrate that "but for" the defendant's conduct, the harm would not have occurred. A defendant can rebut this showing by demonstrating that the harm would have occurred in any event, regardless of the defendant's conduct....
In addition to establishing "cause-in-fact" causation, the State must also demonstrate that the defendant's conduct was the "proximate cause" of the particular harm. Florida courts have considered two basic questions in determining proximate cause: (1) whether the prohibited result of the defendant's conduct is beyond the scope of any fair assessment of the danger created by the defendant's conduct and (2) whether it *1282 would be otherwise unjust, based on fairness and policy considerations, to hold the defendant criminally responsible for the prohibited result.
(Citations omitted.)
Although never explicitly stated in our prior restitution cases, it would appear that the Court has equated the "significant relationship" test with the requirement of proximate causation between the criminal act and the resulting damages because the Court has required both a "but for" causation requirement and a "significant relationship" requirement. Indeed, this is consistent with the analysis employed by the Second District in Arling v. State, 559 So.2d 1274, 1275 (Fla. 2d DCA 1990), where the defendant who was convicted of dealing in stolen property challenged the assessment of restitution for attorneys' fees incurred by the victim in an interpleader action. Judge Altenbernd, writing for the Second District, explained:
We believe the causation required between the offense and the damage under Williams is similar, if not identical, to the proximate causation required in tort between a tortious act and the resulting damage. See Fla. Std. Jury Instr. (Civ.) 5.1. Thus, the victim should be entitled to recover damages through criminal restitution if the causal connection between the criminal offense and the damage is comparable to that proximate causation which would allow the victim to relate comparable damages to a wrongful act in tort.
Id. Therefore, the Second District concluded that restitution was proper because "[i]t is reasonably foreseeable to a person who deals in stolen property that the act of selling stolen property may result in a third party filing litigation." Id.[7] With these principles in mind, we now turn to analyze their application to the conflict issue presented in this case.
Although the Fourth District referred to the effect of the 1993 amendment, as did Judge Sharp in her dissenting opinion in Cheek, the real conflict between Schuette and Cheek is with the application of the "but for" and significant relationship tests to the criminal offense of driving with a suspended license where the defendant is involved in an accident resulting in loss or damages.[8] The Fourth District concluded that Schuette's driving without a legal right began the criminal episode during which the accident occurred, and "but for her driving with a suspended license, the victim would not have incurred damages." Schuette, 782 So.2d at 937. Judge Sharp, *1283 in her dissenting opinion in Cheek, concluded that the damages from the accident clearly had a "significant relationship" to the criminal episode of driving with a suspended license. 700 So.2d at 732 (Sharp, J., dissenting). On the other hand, the Fifth District in Cheek concluded that the damages were not sufficiently related to the offense of driving with a suspended license to warrant the imposition of restitution. See id. at 731.
The State in this case does not argue that a different result is required because of the 1993 amendment, but asserts that the victim's injuries were directly related to the criminal offense of driving without a license and would not have occurred "but for" Schuette's act of driving. In fact, both Schuette and the State rely upon this Court's decision in Glaubius for their respective positions. Essentially, the State advocates for a blanket rule of law that would require the trial court to order restitution whenever an accident occurs while a motorist is driving with a suspended license.
We disagree with a blanket rule of law requiring restitution whenever an accident occurs while a motorist is driving with a suspended license. We conclude that in this case there has been an insufficient relationship between the act of driving with a suspended license and damages or loss resulting from the accident to allow for restitution. What is missing in this case is a causal relationship between the act of driving without a license and the accident that resulted in damages. The suspension of the license was an existing circumstance, rather than a cause of the accident. Although it is undisputed that Schuette was driving illegally by driving with a suspended license, the State failed to present any evidence of a relationship much less prove by a preponderance of the evidenceto establish that the accident and resulting damages were caused by, or related to, Schuette's act of driving without a license.[9]
Although in a different context, we find instructive this Court's discussion in Brackin v. Boles, 452 So.2d 540, 542 (Fla.1984), regarding when the violation of a driver's license restriction is admissible in a tort case. In that case, the plaintiff attempted to elicit on cross-examination evidence that the defendant had a restricted license, which precluded him from driving without the accompaniment of a driver who was at least eighteen years old. See id. This Court upheld the trial court's exclusion of this evidence, explaining:
Evidence is relevant if it tends to prove or disprove a material fact at issue. Hence a person's violating a traffic regulation is admissible evidence only if it tends to prove that that person has negligently operated an automobile. Relevancy is usually inherently established when the traffic regulation which was violated concerns the manner in which the automobile was operated. Relevancy is not so easily established when the traffic regulation which was violated concerns a licensing requirement.

The vast majority of jurisdictions hold that a violation of a driver's license is not evidence of negligence in the absence of some causal connection between the violation and the injury. This requirement of a causal connection for evidence of a violation to be admissible should not be confused with the proximate cause element of a tort action for *1284 negligence. The first is a determination of law made by a trial judge in deciding whether a person's violating a driver's license regulation is relevant. Whether such a violation is a proximate cause of any damage or injuries is a finding of fact to be made by the jury.
Id. at 545 (emphasis supplied). Thus, the Court concluded that because the plaintiffs case was not based on the defendant's inexperience, but rather relied upon allegations that the defendant was exceeding the speed limit, the trial court did not err in excluding the licensing violation. See id.
In conclusion, we hold that the mere occurrence of an accident while the defendant is engaged in the criminal offense of driving with a suspended license does not as a matter of law mandate the award of restitution for the damages arising out of the accident. An award of restitution requires the existence of a causal relationship between the criminal offense of driving with a suspended license and the accident that resulted in the damages or loss. Because the State failed to carry its burden to prove a causal relationship between the offense of driving with a suspended license and the accident, we quash the decision of the Fourth District that reversed the trial court's order refusing to award restitution, and approve the Fifth District's decision in Cheek. We remand for proceedings consistent with this opinion.
It is so ordered.
SHAW, HARDING, ANSTEAD and LEWIS, JJ., concur.
WELLS, C.J., concurs in result only with an opinion.
QUINCE, J., dissents.
WELLS, C.J., concurring in result only.
I concur in result only because I conclude that all that needs to be written in this case is that there was no basis for restitution under section 775.089, Florida Statutes, because the victim's injuries were not caused directly or indirectly by reason that petitioner's license was suspended. As did the majority in Cheek v. State, 700 So.2d 731 (Fla. 5th DCA 1997), I would so hold.
NOTES
[1] The State failed to provide a transcript of the trial proceedings, so the only record the Fourth District had, and this Court has before it, is the sentencing hearing. The Fourth District noted that "the state did not provide a transcript, even after Schuette brought its absence to the state's attention," but held that "the record was sufficient for us to resolve this issue." Schuette, 782 So.2d at 937 n. 2. Relying on our opinion in Applegate v. Barnett Bank, 377 So.2d 1150 (Fla.1979), Schuette argues that we should quash the Fourth District's decision based on the State's failure to provide a complete record. However, the State contends that the fact that Schuette was driving with a suspended license at the time of the accident establishes a causal relationship. The conflict issue presents a legal question as to whether restitution must be ordered for a victim's damages arising from an automobile accident that occurs while the defendant is driving with a suspended license. Therefore, the failure to provide a complete trial transcript does not prevent us from addressing the legal issue presented in this case.
[2] As to the amount of restitution, the Fourth District observed that the victim "testified to the amount of medical bills and lost wages incurred without any documentation of those losses." Schuette, 782 So.2d at 937 n. 3. Because the Fourth District's view was that "such testimony alone would be insufficient to support a restitution order," id., the Fourth District remanded for a "new hearing affording the state the opportunity to submit documentary evidence to prove the amount of the victim's damages." Id. at 937. Based on our disposition in this case, we express no view as to the merits of this holding.
[3] There were several other amendments to section 775.089 in 1993, including the addition of section 775.089(1)(b)(2), which provides:

An order of restitution entered as part of a plea agreement is as definitive and binding as any other order of restitution, and a statement to such effect must be made part of the plea agreement. A plea agreement may contain provisions that order restitution relating to criminal offenses committed by the defendant to which the defendant did not specifically enter a plea.
In addition, several provisions were added that were directed to strengthening the enforceability of restitution, such as a provision that allowed for the continuation of restitution orders for the duration provided for civil judgments, a provision that provided that the restitution order would become a lien on real estate owned by the defendant when properly recorded, and a provision that provided that the restitution provision was not subject to discharge in bankruptcy. The addition of section 775.089(1)(a)(2) is not mentioned in the legislative history for the 1993 amendments to section 775.089. The legislative history mentions only two purposes: (1) amending section 775.089(1)(b) to provide that "an order of restitution entered as part of a plea agreement is as binding as any other order of restitution"; and (2) amending section 775.089(3) to provide "that if restitution ordered by the court is not made within the specified time period, the court may continue the restitution order through the duration of the civil judgment provisions." H.R. Comm. on Crim. Justice, Final Bill Analysis & Econ. Impact Statement, CS for SB 488 (Apr. 20, 1993).
[4] In J.S.H. this Court interpreted section 39.11(1)(g), Florida Statutes (1983), repealed by chapter 90-208, section 17, Laws of Florida, part of the Juvenile Justice Act. Section 39.11 read, in pertinent part:

(1) ... [T]he court having jurisdiction of the child shall have the power ... to: ...
(g) ... order the child or parent to make restitution for the damages or loss caused by his offense ....
(Emphasis supplied.)
[5] The Court concluded that the analysis was equally applicable under both section 39.054(1)(f), Florida Statutes (Supp.1994), and section 775.089(1)(a). See id. Section 39.054(1)(f) is the successor statute to section 39.11(1)(g), which this Court analyzed in J.S.H. Section 39.054(1)(f) provides, in pertinent part, as follows:

As part of the community control program to be implemented by the Department of Juvenile Justice, or, in the case of a committed child, as part of the community-based sanctions ordered by the court at the disposition hearing or before the child's release from commitment, [the trial court may] order the child to make restitution in money, through a promissory note cosigned by the child's parent or guardian, or in kind for any damages or loss caused by the child's offense in a reasonable amount or manner to be determined by the court.
(Emphasis supplied.)
[6] This Court's statement in J.O.S. that the amendments to section 775.089 "expand[ed] the criteria for ordering restitution" appears only in the title to chapter 93-37. Ch. 93-37, § 1, at 198, Laws of Fla. (1993). As noted in footnote 3, the legislative history is silent on the purpose for adding section 775.089(1)(a)(2). See supra note 3. Judge Griffin, however, writing for the Fifth District, opined that the actual purpose of the amendment was to address "the line of cases that limited restitution to the exact crime to which the criminal defendant actually pled, even though several crimes (or greater crimes) were committed as part of the criminal episode." Triplett v. State, 709 So.2d 107, 108 (Fla. 5th DCA 1998). However, because neither the State nor Schuette relies upon the effect of the 1993 amendment in arguing their respective positions, we need not decide whether Judge Griffin's interpretation is correct in order to resolve the conflict presented in this case.
[7] See also Mayer v. State, 632 So.2d 678, 679 (Fla. 5th DCA 1994) (holding that restitution order properly included amount expended by employer to pay for having a special audit performed by accountants to determine how much money defendant took from business and how it was accomplished because the damages were foreseeable); Osteen v. State, 616 So.2d 1215, 1218 (Fla. 5th DCA 1993) (explaining that district courts utilize proximate cause analysis in resolving whether a restitution award is a direct or indirect cause of a criminal offense). But see Hodge v. State, 603 So.2d 1329, 1331 n. 4 (Fla. 4th DCA 1992) (rejecting notion that damages must be reasonably foreseeable or that the element of causation should be likened to the proximate causation requirement in tort, because this would be more restrictive than the "clear language" of section 775.089(1)(a)).
[8] In this case, the criminal offense of driving with a suspended license is coextensive with the criminal episode, which commenced when Schuette began driving with a suspended license and continued after the accident occurred when the defendant left the scene of the accident while driving with a suspended license. Therefore, there is no distinction in this case between the criminal episode and the criminal offense. Further, the State does not contend that the criminal offense of leaving the scene of the accident would support the award of restitution.
[9] In this regard, we agree with Schuette that because of the failure of the State to provide the trial transcript, we have only the record before us, which does not indicate that the driver's license was suspended for "points" or any other reason indicating poor driving. See supra note 1.