IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69729-3-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| JOHN HARRIS, JR., | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 23, 2014 |
| | ) | |

BECKER, J. — Statutory restitution may be ordered under RCW 9A.20.030(1) if the State proves that the crime was a "but for" cause of the victim's loss. Washington does not require proof of proximate cause as that term is used in tort law. In this case, the loss was burial expenses for a woman who died after appellant John Harris ran into her with his car. Harris was driving with a suspended license at the time and was convicted of that crime. Harris should not have been driving, and if he had not been driving, he would not have hit the pedestrian. We conclude driving with a suspended license was a "but for" cause of the loss and affirm the order of restitution.

The accident occurred at night in Tukwila on East Marginal Way, a busy arterial passing through an industrial area. Pedestrian Clashana Grayson, wearing dark clothing, had just gotten off the bus and was crossing mid-block. Harris ran into her, stopped, got out to check on her, saw that she was lying

motionless in the street, and left the scene. Bystanders ran to help Grayson, but another car ran over her before they were able to block traffic. Grayson died at the hospital. The driver of the second car was not identified.

The State did not charge Harris with vehicular homicide. That would have required substantial evidence, which apparently was lacking, that Harris was driving recklessly, under the influence of alcohol or drugs, or with disregard of others. RCW 46.61.520. Instead, the State charged Harris with felony hit-and-run and driving with a suspended license. A jury convicted Harris as charged. In a special verdict, the jury determined that Harris was "involved in an accident that resulted in the death of another person." See RCW 46.52.020(4)(a)-(b) (hit-and-run resulting in death is a class B felony; hit-and-run resulting in injury is a class C felony). Harris was sentenced to a total of 87 months' imprisonment.

At the State's request, the court ordered Harris to pay restitution of $8,655.22 to the decedent's relatives for her burial expenses. The order of restitution was part of the sentence for driving with a suspended license. The State did not seek restitution on the conviction for felony hit-and-run, recognizing that the burial expenses were not causally connected to that offense under Washington case law. See State v. Hartwell, 38 Wn. App. 135, 684 P.2d 778 (1984), overruled on other grounds, State v. Krall, 125 Wn.2d 146, 881 P.2d 1040 (1994).

Harris appeals the order of restitution.

A court's power to impose restitution is statutory. State v. Thomas, 138 Wn. App. 78, 81, 155 P.3d 998 (2007). Harris contends the order of restitution

2

for the burial expenses must be vacated because it was not authorized by statute.

Restitution is an integral part of the Washington system of criminal justice. Restitution statutes indicate a strong public policy to provide restitution whenever possible. State v. Shannahan, 69 Wn. App. 512, 517-18, 849 P.2d 1239 (1993). We will reverse an award of restitution only if the court abused its discretion, so long as the restitution is of a type authorized by statute. Thomas, 138 Wn. App. at 81. A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. Thomas, 138 Wn. App. at 81.

A court is authorized to impose restitution in lieu of a fine where the defendant "caused a victim to lose money or property through the commission of a crime":

> If a person has gained money or property or caused a victim to lose money or property through the commission of a crime, upon conviction thereof or when the offender pleads guilty to a lesser offense or fewer offenses and agrees with the prosecutor's recommendation that the offender be required to pay restitution to a victim of an offense or offenses which are not prosecuted pursuant to a plea agreement, the court, in lieu of imposing the fine authorized for the offense under RCW 9A.20.020, may order the defendant to pay an amount, fixed by the court, not to exceed double the amount of the defendant's gain or victim's loss from the commission of a crime. Such amount may be used to provide restitution to the victim at the order of the court. It shall be the duty of the prosecuting attorney to investigate the alternative of restitution, and to recommend it to the court, when the prosecuting attorney believes that restitution is appropriate and feasible. If the court orders restitution, the court shall make a finding as to the amount of the defendant's gain or victim's loss from the crime, and if the record does not contain sufficient evidence to support such finding the court may conduct a hearing upon the issue. For purposes of this section, the terms "gain" or "loss" refer to the amount of money or the value of property or services gained or lost.

RCW 9A.20.030(1).

Harris first contends this statute does not support the order of restitution because the offense of driving with a suspended license is not an offense that involves loss of money or property. Under the plain language of the statute, that is not the issue. The issue is whether Harris "caused a victim to lose money or property through the commission of a crime." Harris also argues that Grayson was the victim, not her relatives. In view of the strong public policy favoring restitution, there is no reason to impose a narrowing definition of the term "victim." It was not an abuse of discretion for the court to construe "victim" as including the decedent's relatives who had to pay for her burial, a monetary loss.

Harris next contends the State did not prove that the burial expenses were causally connected to the crime of driving with a suspended license.

The State must establish by a preponderance of the evidence that the victim's loss would not have occurred "but for" the crime. Thomas, 138 Wn. App. at 82. To determine whether a causal connection exists, the reviewing court examines the underlying facts of the charged offense, not the name of the crime in question. State v. Griffith, 164 Wn.2d 960, 966, 195 P.3d 506 (2008). The loss need not be foreseeable. State v. Enstone, 137 Wn.2d 675, 682-83, 974 P.2d 828 (1999). Causation may be determined by employing a "but for" inquiry. State v. Tobin, 161 Wn.2d 517, 524, 166 P.3d 1167 (2007).

Harris relies on a Florida case in which the defendant, while driving with a suspended license, was involved in an accident in which another person was injured. Schuette v. State, 822 So. 2d 1275 (Fla. 2002). The State asked the

4

court to order restitution to the injured person for medical bills and lost wages, arguing that the injuries would not have occurred "but for" the defendant's driving. Schuette, 822 So. 2d at 1283. The trial court denied restitution, and the Florida Supreme Court affirmed. "What is missing in this case is a causal relationship between the act of driving without a license and the accident that resulted in damages. The suspension of the license was an existing circumstance, rather than a cause of the accident." Schuette, 822 So. 2d at 1283.

Schuette is not persuasive authority because in Florida, the test for causation is two-pronged. The State must not only prove "but-for" causation but also must show that the loss bears "a significant relationship" to the offense of conviction. Schuette, 822 So. 2d at 1279. In this respect, Florida's test for causation resembles the test for proximate cause in a civil tort case. Schuette, 822 So. 2d at 1282. The same is true in Vermont. State v. LaFlam, 184 Vt. 629, 965 A.2d 519, 522 (2008) ("but-for causation" is an insufficient basis for restitution; some form of proximate causation is also required); see also People v. Taylor, 179 Cal. App. 3d Supp. 1, 5, 225 Cal. Rptr. 430 (1986) (a "but for" rule is not the test of the validity of a condition of restitution).

In LaFlam, the defendant drove through the front door of a store and caused $1,000 worth of damage. LaFlam, 965 A.2d at 520. The defendant was convicted only of driving with a suspended license. Citing Schuette, the court denied the State's request for restitution on the ground that causation in fact was not enough:

> Under the State's theory, the sole connection between defendant's conviction for driving with a suspended license and the damage to

5

the building is that defendant's driving caused the damage to the building, and defendant was driving illegally at the time. We can reach this result only if we hold that causation in fact—"but for" causation—is the sole standard for causation for restitution in Vermont.

LaFlam, 965 A.2d at 521-22.

Here, the State offers the same theory of causation that was rejected by the courts in Florida and Vermont. The State's theory is that if Harris had not been driving, he would not have hit and killed Grayson. The State's theory is sound because in Washington, "but for" causation is sufficient to support an order of restitution.

Harris nevertheless contends the vacation of the order of restitution is compelled by Hartwell. In Hartwell, the defendant was convicted of hit-and-run and was ordered to pay restitution for the victims' injuries as part of his sentence for that conviction. We reversed, reasoning that leaving the scene of the accident was the precise event underlying the offense of hit-and-run. Because the victim's injuries were sustained before the defendant committed the offense, the offense did not cause them. We said, "Had Hartwell stayed at the scene, thereby not committing the offense, the injuries presumably would have been the same." Hartwell, 38 Wn. App. at 140. Harris argues that, given the absence of evidence that he was driving in an unsafe manner, Grayson presumably would have died even if he had been driving with a valid license and therefore under Hartwell there was no causation.

Whether or not Harris was driving carefully is immaterial to deciding whether or not his criminal conduct was a "but for" cause of the loss. Unlike in

6

Hartwell, the criminal act by Harris for which he was ordered to pay restitution was driving with a suspended license, not leaving the scene of the accident. It was his criminal act of driving when prohibited from doing so, not the status of having a suspended license, that caused the loss. On the night of the accident, Harris should not have been driving at all. It was his decision to drive illegally that placed him behind the wheel on East Marginal Way at the time and place Grayson was attempting to cross.

Harris argues that under the circumstances, Grayson might just as easily have been killed on that spot by a different driver. But the court was not obligated to speculate about what might have happened. The order of restitution was grounded on what did happen. But for Harris driving that night on East Marginal Way, Grayson's death would not have occurred as it did.

We conclude the State sufficiently proved that Harris, through his commission of the crime of driving with a suspended license, caused Grayson's relatives to incur burial expenses. The trial court did not abuse its discretion by ordering restitution.

Harris also contends that the court erred in denying his request for substitute counsel. On June 19, 2012, Harris told the court that he was unable to communicate with his public defender and asked that new counsel be appointed. The request was denied, and Harris did not renew it at any time during the five months that elapsed before the trial began on November 13, 2012.

In reviewing the denial of a motion to substitute new counsel, we consider (1) the extent of the conflict between the accused and his attorney, (2) the

7

adequacy of the trial court's inquiry into the conflict, and (3) the timeliness of the motion. In re Pers. Restraint of Stenson, 142 Wn.2d 710, 724, 16 P.3d 1 (2001). Harris is incorrect when he argues that he established a significant conflict merely by alleging that he was unable to communicate with defense counsel. In the three cases he cites, the colloquies were judged inadequate because at the time new counsel was requested, there was already significant evidence on the record of a breakdown in the attorney-client relationship. See Daniels v. Woodford, 428 F.3d 1181, 1199 (9th Cir. 2005), cert. denied, 550 U.S. 968 (2007); United States v. Nguyen, 262 F.3d 998, 1004-05 (9th Cir. 2001); United States v. Adelzo-Gonzalez, 268 F.3d 772, 778 (9th Cir. 2001). We conclude the trial court did not err in refusing to grant Harris' request for new counsel based on a single bare assertion of communication problems five months before trial.

In a statement of additional grounds for review filed as authorized by RAP 10.10, Harris contends that the trial court went into chambers with counsel and held a discussion about jury selection without him. The record does show that this occurred.[1] But the record also shows that after the discussion, the prosecutor advised the court that the in-chambers discussion was improper. "We've been advised by our appellate unit to not go in chambers, to just not do it, and that's why I expressed my concern."[2] The court decided to restart voir dire again from the beginning with the same pool of jurors.[3]

---

[1] Report of Proceedings (Nov. 14, 2012) at 154 (filed May 24, 2013).
[2] Report of Proceedings (Nov. 14, 2012) at 155 (filed May 24, 2013).
[3] Report of Proceedings (Nov. 14, 2012) at 157-59 (filed May 24, 2013).

The applicable case is <u>State v. Irby</u>, 170 Wn.2d 874, 246 P.3d 796 (2011). In <u>Irby</u>, the trial court erred by making decisions regarding the fitness of jurors when the defendant was not present. <u>Irby</u>, 170 Wn.2d at 882. Here, no decisions were made during the brief chambers conference and voir dire began all over again once the problem was brought to the court's attention. We are satisfied that the court's handling of this situation avoided creating grounds under <u>Irby</u> for appellate review.

Affirmed.

WE CONCUR:

Baker, J.

Dwyer, J.

Cox, J.