IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72831-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MARYANN REHAUME, | ) | |
| | ) | |
| Appellant. | ) | FILED:  March 23, 2015 |

SCHINDLER, J. — A jury found Maryann Rehaume guilty of eight counts of theft in

the second degree, one count of theft in the third degree, and one count of

misappropriation by a public officer.  Rehaume appeals the order of restitution, arguing

the court did not have the authority to impose restitution for court costs and restitution

for checks not causally connected to the charged crimes.  Because the issue of whether

the court may order restitution for the cashier's checks is not yet ripe for review, we do

not address it.  Because restitution may not be imposed for costs incurred solely as the

result of a criminal trial because such costs are not the result of the charged crime, we

reverse the imposition of restitution for attendance at trial of the assistant fraud audit

manager, subpoena service fees, and witness costs.

FACTS

Maryann Rehaume worked as the head secretary of the Cowlitz County

Corrections Department Probation Services Division (Probation Department).  Her

duties included supervising the Probation Department cashiers, processing financial collection data, and preparing deposits. Every morning, Rehaume sent the previous day's deposits to the Cowlitz County Treasurer's Office (County Treasurer).

On January 5, 2011, Probation Department Office Assistant Cim Cogburn notified Cowlitz County Corrections Department Director Marin Fox Hight that the Probation Department had not made any deposits since November 18, 2010 and, as a result, its year-end numbers "were going to be off." Hight estimated roughly $46,000 was missing. Rehaume denied knowing anything about missing deposits.

On January 6, Rehaume's supervisor placed Rehaume on unpaid administrative leave pending an investigation. That same day, Rehaume asked her father-in-law, Robert Rehaume, if he could "help [her] out with some money problems." Robert[1] gave Rehaume a cashier's check for $31,000.

On January 10, Rehaume's attorney delivered a letter and 28 deposit envelopes to the County Treasurer. The total amount in the envelopes was $50,333.80— $35,022.25 in cash and $15,311.55 in cashier's checks. The letter states, in pertinent part:

> As a result of her abrupt dismissal [on January 6] and your office closure on Friday, Mrs. Rehaume directed me to ensure secure delivery of the deposits accompanying this letter, which she had not yet justified for acceptance by your office. To Mrs. Rehaume's knowledge, these deposits are in order and up to date for treasurer reconciliation.

Washington State Auditor's Office Assistant Fraud Audit Manager Sherrie Ard conducted an audit of the Probation Department and determined that $51,816 was missing.

---

[1] We use Robert's first name for clarity and mean no disrespect in doing so.

The State charged Rehaume with eight counts of theft in the second degree, one count of theft in the third degree, and one count of misappropriation of accounts by a public officer. The information alleged Rehaume committed the thefts, totaling $9,006.28, between July 3, 2007 and January 10, 2011. As an aggravating factor, the information alleged the eight counts of theft in the second degree and one count of misappropriation of accounts by a public officer constitute major economic offenses under RCW 9.94A.535(3)(d).

A number of witnesses testified during the four-day jury trial, including Ard, Cogburn, Hight, and Robert. The jury found Rehaume guilty as charged. The court imposed an exceptional sentence of 36 months on each of the eight counts of theft in the second degree and the one count of misappropriation of accounts by a public officer to run concurrently.[2] The court ordered Rehaume to pay legal financial obligations, including a victim assessment fee of $500, fees for court costs in the amount of $600, a DNA[3] collection fee of $100, and restitution but scheduled a hearing to determine the amount.

The State requested a total of $59,390.81 in restitution. In addition to the charged thefts totaling $9,006.28, the State requested $26,730.58 for the cost of the audit; $6,186.40 for the cost of Ard's attendance at trial; $786.00 for subpoena service fees; and $1,570.00, including a per diem for Robert and his daughter who traveled with him from Arizona, his airfare, mileage to and from the airport, and lodging. The State also requested restitution of $15,111.55 for the cashier's checks Rehaume's attorney delivered to the County Treasurer on January 10 "as a special expense of

---

[2] The court imposed a suspended sentence of 364 days for theft in the third degree.
[3] Deoxyribonucleic acid.

3

investigation." The State attached invoices showing the costs of the subpoena service fees, the audit, and the costs for Ard's attendance at trial. In his declaration, the prosecutor states that cashier's checks "expire after a certain date" and that "[n]one are now negotiable."

At the restitution hearing, the State called Cowlitz County Prosecutor's Office Administrative Assistant Crystal Iverson to testify about the costs associated with bringing Robert from Arizona to testify and the subpoena service fees. The State also called Cowlitz County Auditor Kris Swanson to testify about the cost of the audit to investigate the missing funds and the costs for Ard to attend the trial.

Rehaume's attorney argued the costs for Ard's attendance at trial, the subpoena service fees, and the costs incurred in obtaining Robert's testimony resulted from "the constitutional exercise of the constitutional right to trial" and were not compensable as restitution. Rehaume also objected to the imposition of restitution for the cashier's checks, arguing the State had not established when the checks expired or that they were no longer negotiable.

The court awarded restitution to the State in the amount of $59,146.03. The court order states that "[s]ince all monies ordered herein are to be paid to Cowlitz County, the Court labels them all restitution for accounting convenience." In addition to awarding restitution for the amount stolen and the cost of the audit, the court awarded the State $6,186.40 for the costs of Ard's attendance at trial, ruling that "it is appropriate to award as restitution . . . the expense of State Auditor Sherrie Ard attending the trial at the prosecutor's side throughout as investigating assistant." The court also awarded $786.00 in costs for subpoena service fees and $1,325.22 in travel costs for Robert, but

4

denied the State's request for reimbursement of the per diem for his daughter and the cost to change Robert's flight because that was incurred "in part through the State's failure to immediately go through the interstate subpoena procedure." The court also granted the State's request for $15,111.55 in restitution to replace the cashier's checks, but required the State to submit the checks for payment and ordered any amount honored deducted from the restitution obligation.

## ANALYSIS

Rehaume argues the court did not have the authority to order her to pay restitution for costs incurred as a result of her criminal trial. Rehaume also argues the restitution ordered by the court to replace the cashier's checks is not causally connected to the charged crimes.

The authority to impose restitution is statutory. State v. Griffith, 164 Wn.2d 960, 965, 195 P.3d 506 (2008). Under RCW 9.94A.753(5), the court shall order restitution "whenever the offender is convicted of an offense which results in . . . damage to or loss of property." The award must be "based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury." RCW 9.94A.753(3).[4]

Restitution "is allowed only for losses that are 'causally connected' to the crimes charged." State v. Tobin, 161 Wn.2d 517, 524, 166 P.2d 1167 (2007). "Losses are causally connected if, but for the charged crime, the victim would not have incurred the

---

[4] RCW 9.94A.753(3) states, in pertinent part:

[R]estitution ordered by a court pursuant to a criminal conviction shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury. Restitution shall not include reimbursement for damages for mental anguish, pain and suffering, or other intangible losses, but may include the costs of counseling reasonably related to the offense. The amount of restitution shall not exceed double the amount of the offender's gain or the victim's loss from the commission of the crime.

loss." Griffith, 164 Wn.2d at 966 (citing Tobin, 161 Wn.2d at 524). The trial court cannot impose restitution based on a defendant's " 'general scheme' " or acts " 'connected with' " the crime charged when those acts are not part of the charge. State v. Woods, 90 Wn. App. 904, 907-08, 953 P.2d 834 (1998) (quoting State v. Miszak, 69 Wn. App. 426, 428, 848 P.2d 1329 (1993)).

We review a trial court's order of restitution for abuse of discretion. Griffith, 164 Wn.2d at 965. The court abuses its discretion if its decision is manifestly unreasonably or exercised on untenable grounds for untenable reasons. State v. Harris, 181 Wn. App. 969, 973, 327 P.3d 1276 (2014). The court's application of an incorrect legal analysis or other error of law can constitute an abuse of discretion. Tobin, 161 Wn.2d at 523.

Rehaume contends the court erred in imposing the costs of Ard's attendance at trial, the subpoena service fees, and the witness costs as restitution. We agree with Rehaume.

A criminal trial occurs only where the defendant chooses to exercise his or her right to a jury trial. The decision to exercise the right to a jury trial, while "connected with" the crime charged, is not an act constituting a part of the charge. See Woods, 90 Wn. App at 907-08. Because the defendant's criminal trial does not directly result from the defendant's crimes, costs that arise solely as a result of the trial are not compensable as restitution. See State v. Goodrich, 47 Wn. App. 114, 115, 733 P.2d 1000 (1987) (reversing imposition of restitution for victim's lost wages where losses resulted from victim's attendance at trial and not from injury).

The case the State relies on to argue court costs are compensable as restitution, State v. Christensen, 100 Wn. App. 534, 997 P.2d 1010 (2000), is inapposite. In Christensen, an attorney was convicted of stealing from his clients. Christensen, 100 Wn. App. at 535. Before the restitution hearing, one of the victims hired an attorney to sue the defendant. The victim eventually settled with the defendant for less than the amount of her loss. Christensen, 100 Wn. App. at 535. At the restitution hearing, the trial court ordered the defendant to pay the difference between the amount of the victim's loss and the amount she recovered from the settlement minus her attorney fees and costs. Christensen, 100 Wn. App. at 536. The defendant appealed, arguing the restitution amounted to reimbursing the victim for attorney fees in a civil case in violation of "the 'American rule' on attorney fees." Christensen, 100 Wn. App. at 537. This court affirmed. The court held that because the victim had to pay attorney fees to get any recovery in the civil suit, incurring the fees was a direct result of the offense. Christensen, 100 Wn. App. at 538.

Here, unlike in Christensen, because the costs of Ard's attendance at trial, the subpoena service fees, and the witness costs were incurred solely as a result of the criminal trial and not the result of the charged crimes, we reverse the court's decision to include these costs as restitution.

Rehaume also argues the State failed to establish a causal connection between the restitution ordered for the cashier's checks and the charged crimes. Rehaume contends there is no causal connection because the checks did not expire as a result of her crimes. The State argues Rehaume's challenge is not ripe. We agree with the State.

7

In its oral ruling, the court noted that the State had not established when the checks expired or whether the checks were still valid when Rehaume's attorney delivered them to the County Treasurer's office.

> The only one I still have some unanswered questions about it was money orders, because I don't — you know certainly we can substitute a copy of an exhibit for the original at any point in time. I don't know what efforts if any were made to get money orders cashed when this whole thing broke, before they were no longer valid, or which ones were available to be cashed. I guess that's the only information that I think would still need to — is there — were there any in there that were still valid at the point the police got a hold of (inaudible).

The order specifically provides that before any restitution for the cashier's checks may be imposed, the State must make a "reasonable effort" to cash the checks, and "[a]ny amount honored" will be deducted from the restitution obligation. The order also states that after the State submits the checks for payment, Rehaume "may request reconsideration" of the restitution obligation. Further, the court explicitly stated in its oral ruling that it would "leave . . . open the issue of credit on whether or not those [cashier's checks] should have been cashed earlier or if they could be cashed as — or still could and credited."

Because the State must take further steps, the question of whether the court can order restitution for the cashier's checks is not ripe. See State v. Sanchez Valencia, 169 Wn.2d 782, 788-91, 239 P.3d 1059 (2010) (claim is ripe for appeal if the issues raised are primarily legal, they do not require further factual development, the challenged action is final, and the defendant is burdened by the condition without further action by the State).

We reverse the court's decision to impose restitution of $6,186.40 for the cost of Ard's attendance at trial, $786.00 for subpoena service fees, and $1,325.22 in witness costs, and remand.

WE CONCUR: