**NOT FOR PUBLICATION  IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000602
20-SEP-2022
07:46 AM
Dkt. 54 SO**

NO. CAAP-20-0000602

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
MACHELLE LEA PATRICK, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
LAHAINA DIVISION
(CASE NO. 2DTC-06-000182)

SUMMARY DISPOSITION ORDER
(By:  Ginoza, Chief Judge, Leonard and Wadsworth, JJ.)

Defendant-Appellant Machelle Lea Patrick (**Patrick**) appeals from the September 18, 2020 Order and Notice of Entry of Order (**Order Denying Motion to Correct**) entered by the Wailuku Division of the District Court of the Second Circuit (**District Court**).[1]  The Order Denying Motion to Correct denied Patrick's August 31, 2020 Motion to Correct Illegal Sentence and Revoke Restitution (**Motion to Correct**).

On March 19, 2006, Patrick was issued a citation (2DTC-06-000182), apparently after she collided with a street light in

--------

[1]   The Honorable Blaine J. Kobayashi presided.

Lahaina.  Patrick was thereby cited for Driving Motor Vehicle Without Valid Driver's License (**DWOL**), in violation of Hawaii Revised Statutes (**HRS**) § 286-102 (Supp. 2005);[2] Failure to Return Plates Upon Termination of Insurance Policy (**Plates**), in violation of HRS § 431:10C-114 (1987); and No Motor Vehicle Insurance (**NMVI**), in violation of HRS § 431:10C-104 (1997).  On August 28, 2006, Patrick pled no contest to DWOL, pursuant to a

---

[2]    HRS § 286-102 (Supp. 2005) provides, in pertinent part:

> **§ 286-102  Licensing.**  (a)  No person, except one exempted under section 286-105, one who holds an instruction permit under section 286-110, one who holds a provisional license under section 286-102.6, one who holds a commercial driver's license issued under section 286-239, or one who holds a commercial driver's license instruction permit issued under section 286-236, shall operate any category of motor vehicles listed in this section without first being appropriately examined and duly licensed as a qualified driver of that category of motor vehicles.
>      (b)  A person operating the following category or combination of categories of motor vehicles shall be examined as provided in section 286-108 and duly licensed by the examiner of drivers:
>      . . . .
>      (3)   Passenger cars of any gross vehicle weight rating, buses designed to transport fifteen or fewer occupants, and trucks and vans having a gross vehicle weight rating of fifteen thousand pounds or less; and
>      (4)   All of the motor vehicles in category (3) and trucks having a gross vehicle weight rating of fifteen thousand one through twenty-six thousand pounds.
>      . . . .
>      (c)  No person shall receive a driver's license without surrendering to the examiner of drivers all valid driver's licenses in the person's possession.  All licenses so surrendered shall be returned to the issuing authority, together with information that the person is licensed in this State; provided that with the exception of driver's licenses issued by any Canadian province, a foreign driver's license may be returned to the owner after being invalidated pursuant to issuance of a Hawaii license; and provided further that the examiner of drivers shall notify the authority that issued the foreign license that the license has been invalidated and returned because the owner is now licensed in this State.  No person shall be permitted to hold more than one valid driver's license at any time[.]

plea agreement entered into with Plaintiff-Appellee the State of Hawaiʻi (**State**), which also included restitution "as determined by Special Services Branch (**SSB**) (06-24748)," dismissal of the other two counts (Plates and NMVI), and the State's agreement not to "add on inattention."[3]  "06-24748" appears to refer to another case involving Patrick that was pending before the District Court, but those proceedings are not part of the record on appeal in this case.  On September 18, 2006, the Monetary Restitution Program (**MRP**) filed a restitution recommendation in the amount of $2,046.25.

On November 6, 2006, Patrick failed to appear for a hearing on the issue of restitution, and a bench warrant was issued.  Patrick appeared in custody on January 5, 2007, where she was ordered to appear at a continued restitution hearing on January 24, 2007.  On January 24, 2007, Patrick objected to the requested restitution amount of $2,046.25, and a contested restitution hearing was set for February 7, 2007.  Patrick failed to appear at the hearing on February 7, 2007, and a bench warrant was issued.

On June 22, 2007, the State filed a Motion to Strike Restitution Hearing (**Motion to Strike**).  It appears that the State argued that Patrick agreed to pay restitution in the amount

---

[3]     The District Court noted, at the September 18, 2020 hearing on the Motion to Correct, that it appeared the plea agreement was negotiated, but that the record before it was unclear with respect to exactly what transpired at the time of the plea agreement.

determined by the SSB as part of the plea agreement on August 28, 2006.  On June 25, 2007, the Office of the Public Defender (**OPD**) moved to withdraw as counsel and the State's Motion to Strike was continued to August 8, 2007.  On August 8, 2007, a bench warrant was issued after Patrick failed to appear for the rescheduled restitution hearing.

On November 28, 2007, Patrick appeared in District Court, and the OPD's motion to withdraw as counsel was granted. The State's Motion to Strike was continued to December 12, 2007. The December 12, 2007 hearing was postponed until January 2, 2008, because Patrick arrived late, and by the time of her arrival, standby counsel had left.

At the January 2, 2008 hearing, the State's Motion to Strike was granted, Patrick agreed to pay restitution in the amount of $2,046.25, and the District Court ordered Patrick to pay a minimum of $25 per month due the first week of each month. Patrick appeared on April 2, 2008, for a proof of compliance hearing, and paid $25 towards restitution with future payments adjusted to $20 per month by the fourth week of each month.  The payment amount was later adjusted further to $15 per month on August 12, 2009, and lowered again on November 8, 2010 to $10 per month, due by the fourth week of each month.

Between April 2, 2008, and June 10, 2020, several proof of compliance hearings were held.  During this period, Patrick made payments to reduce the amount of restitution owed, and converted fines owed to community service, which she then

4

completed.  However, Patrick failed to appear for multiple compliance hearings, which led to the issuance of bench warrants, and she appeared in custody multiple times pursuant to those warrants.  Court minutes reflect that, as of April 1, 2015, the remaining restitution due was $1,625.00.  It appears that no payments have been made since.

On June 10, 2020, Patrick appeared in custody, again represented by the OPD.[4]  Patrick made an oral motion to reduce or waive restitution due to her indigent status, which the District Court denied.  At that hearing, Patrick agreed to a free standing restitution order.

Thereafter, Patrick filed the Motion to Correct, which was denied after a hearing.  An appeal was timely filed after the entry of the Order Denying Motion to Correct.

Patrick raises a single point of error on appeal contending that the District Court erred in entering the Order Denying Motion to Correct, with three sub-arguments:  (1) Patrick's DWOL did not cause the damage to the light pole, thus restitution was wrongly ordered; (2) the Motion to Correct should have been granted because the District Court's practice of setting compliance hearings to enforce restitution was an abuse of discretion, a waste of judicial resources, and criminalize individuals who lack the capacity to pay restitution; and (3) Patrick's agreement to pay restitution (a) could not take

---

[4]     Although a District Court order stemming from that hearing notes that Patrick appeared in custody, it does not reflect why she was in custody. No transcript was ordered for this hearing.

5

precedence over the illegality of a sentence that ordered restitution for a non-causal offense and (b) may be impossible to fulfill, depending on Patrick's circumstances.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Patrick's point of error as follows:

(1) Patrick argues that restitution was erroneously ordered because her DWOL did not cause damage to the light pole. This argument was raised roughly 14 years after Patrick entered into the plea agreement, which included Patrick's agreement to pay restitution in exchange for dismissal and forbearance on other charges. There is no record of what "caused" the accident, what representations were made or what stipulations or agreements took place at the August 28, 2006 hearing, or what transpired in the other case that is referenced in conjunction with the amount of restitution that was determined to be due. To the extent that Patrick argues that the State failed to establish sufficient evidence that there was a causal relationship between her driving without a license and the damage to the light pole, we conclude that this argument was waived.

Patrick does not argue that there cannot, as a matter of law, be a causal relationship between the conduct of driving without a license and damage to the light pole, but cites a Florida Supreme Court case, which this court cited in State v. Domingo, 121 Hawaiʻi 191, 195, 216 P.3d 117, 121 (App. 2009), for

6

the proposition that the District Court erred in ordering restitution in Patrick's case.  However, in the Florida case, the Florida Supreme Court held that:

> the mere occurrence of an accident while the defendant is engaged in the criminal offense of driving with a suspended license does not as a matter of law mandate the award of restitution for the damages arising out of the accident.  An award of restitution requires the existence of a causal relationship between the criminal offense of driving with a suspended license and the accident that resulted in the damages or loss.

Schuette v. State, 822 So.2d 1275, 1284 (Fla. 2002).

Patrick argues that, here, the State failed to prove such a casual relationship.  However, as detailed in a lower court's (quashed) decision, the evidentiary record in the Schuette case established that the victim was a pedestrian who shouted obscenities at the defendant, who was initially a passenger in the vehicle; the defendant took the wheel after the pedestrian pepper sprayed the driver.  The defendant then turned the vehicle around, entered the wrong lane on a divided roadway and traveled the wrong way on a one-way road, in the direction of the victim.  When the victim entered the road, the defendant struck the victim with the vehicle.  Schuette v. State, 782 So.2d 935, 936 (Fla. 4th Dist. Ct. App. 2001) (quashed).  In light of that evidentiary record, the Florida Supreme Court concluded that no causal relationship was established between the defendant's driving with a suspended license and the victim's loss.  822 So.2d 1275 at 1284.  As noted above, there is no such evidentiary record here.  Schuette does not support a determination that

7

driving without a license can never be a substantial factor in a victim's losses.

As noted by the State, the legislative history of Act 214 (1967),[5] which enacted HRS chapter 286, including HRS § 286-102, indicates that the chapter's purpose was to allow the State to "initiate, coordinate and accelerate every available means to decrease the fatalities, injuries, damages and losses resulting from highway traffic accidents."  1967 Haw. Sess. Laws Act 214, § 1 at 257.  Reading Act 214 in conjunction with HRS § 286-102, supports a conclusion that HRS § 286-102 was not intended solely as a regulatory statute, but was enacted with the express purpose of reducing damages and losses caused by highway traffic accidents.  There are numerous scenarios in which a person's violation of HRS § 286-102 could result in a victim's losses under HRS § 706-646.

Accordingly, we reject Patrick's first argument.

(2)  Patrick argues that the District Court erred in denying the Motion to Correct because its practice of setting compliance hearings to enforce restitution is an abuse of discretion and a waste of judicial resources, and criminalizes individuals who lack the capacity to pay restitution.  Patrick

---

[5]     1967 Haw. Sess. Laws Act 214, § 1 states:

> SECTION 1.  Declaration of purpose.  Deaths of persons and injuries to them and damage to property with the other losses suffered on account of highway traffic accidents are of grave concern to the State and its citizens as well as to the federal government.  The legislature finds and declares that it is in the public interest that the State initiate, coordinate and accelerate every available means to decrease the fatalities, injuries, damages and losses resulting from highway traffic accidents.

relies on, *inter alia*, <u>State v. Gaylord</u>, 78 Hawaiʻi 127, 154, 890 P.2d 1167, 1194 (1995), where the supreme court held that the imposition of consecutive sentences merely to ensure restitution payments was an abuse of discretion.  Here, however, Patrick was not given a harsher sentence in order to enforce restitution. Patrick repeatedly failed to appear for scheduled hearings, bench warrants were issued as a result, and she was arrested pursuant to those warrants.  Patrick does not argue, and points to nothing in the record to support, that she was impermissibly held in custody pursuant to those bench warrants.  At no point was Patrick imprisoned, or her sentence otherwise made more severe, as a result of her failure to complete payment of the ordered restitution.

Patrick further argues that her failure to pay the restitution "for whatever reason" over the last 14 years demonstrates her inability to pay it.  However, Patrick fails to establish a sufficient factual record to support a current inability to make payments of $10 per month, and has not provided any authority requiring the District Court to grant her relief based on this argument.

(3)  Patrick argues that she is entitled to relief because there can be no plea bargain to an illegal sentence. While Patrick's legal proposition is not wrong, as discussed above, Patrick has not established that restitution constituted an illegal sentence here.  Therefore, we conclude that she is not entitled to relief based on this argument.

Finally, Patrick argues that the District Court erred in entering the Order Denying Motion to Correct because the court entered the order without first inquiring as to Patrick's personal and financial circumstances to determine her ability to pay.  Patrick cites no authority for this argument and we find none.  We conclude that it is without merit.

For these reasons, the District Court's September 18, 2020 Order Denying Motion to Correct is affirmed.

DATED:  Honolulu, Hawaiʻi, September 20, 2022.

On the briefs:                      /s/ Lisa M. Ginoza
                                    Chief Judge
Phyllis J. Hironaka,
Deputy Public Defender,             /s/ Katherine G. Leonard
for Defendant-Appellant             Associate Judge

Gerald K. Enriques,                 /s/ Clyde J. Wadsworth
Deputy Prosecuting Attorney,        Associate Judge
for Plaintiff-Appellee