# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

BECKY NADINE HUNTER, AKA
Rebekah A. Hunter, AKA Rebecca
A. Hunter, AKA Ann R. Hunter,
AKA Rebekah A. Smith, AKA
Becky Nadine Smith, AKA
Rebekah Nadine Carden, AKA
Rebekah Nadine Smith, AKA
Rebecca A. Bennett, AKA
Rebekah An nadine Bennett
Hunter, AKA Rebekah Ann
Hunter, AKA Rebekah Nadine
Pratt, AKA Rebecca Smith,
    *Defendant-Appellant.*

No. 09-30246

D.C. No.
CR-4-00002-RRB

OPINION

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted
March 9, 2010—Seattle, Washington

Filed August 20, 2010

Before: Raymond C. Fisher and Marsha S. Berzon,
Circuit Judges, and G. Murray Snow, District Judge.*

*The Honorable G. Murray Snow, District Judge for the District of Arizona, sitting by designation.

12269

Opinion by Judge Snow

## COUNSEL

Karen L. Loeffler, United States Attorney's Office, Anchorage, Alaska, for the plaintiff-appellee.

Terrence Kellogg, Seattle, Washington, for the defendant-appellant.

## OPINION

MURRAY SNOW, District Judge:

Defendant-Appellant Becky Nadine Hunter ("Hunter") appeals the district court's order awarding restitution to two of her former employers. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.[1]

## BACKGROUND

On June 19, 2009, Hunter was sentenced for committing various federal crimes, including five counts of mail fraud in violation of 18 U.S.C. § 1341. Hunter's mail fraud convictions arose from a series of false documents she mailed for the purpose of obtaining employment as a nurse.

---

[1]In a concurrently-filed memorandum disposition, we address the other issues raised by Hunter on appeal.

Hunter moved to Alaska in 1998, where she stole the identity of a registered nurse and used it to obtain a nursing license. She used the fake license, along with a false employment history, address, and identity to obtain employment as a nurse. She was then hired as a school nurse by Fairbanks North Star Borough School District in September 1998. During her employment with North Star Borough, Hunter was paid a total of $12,558 in wages and benefits. After North Star Borough discovered Hunter's false identity and fired her, Hunter used a similar set of false documents to obtain a nursing position with the United States Department of Labor. During her employment as a nurse with the Department of Labor, Hunter was paid $5,457.

In 2004, Hunter was arrested after an FBI investigation uncovered additional fraudulent conduct. Following a successful appeal of her original sentence, *see United States v. Hunter*, 286 F. App'x 482, 483 (9th Cir. 2008), Hunter was resentenced to ninety-six months incarceration and ordered to pay $12,558 in restitution to North Star Borough and $5,547 in restitution to the Department of Labor.

## DISCUSSION

Hunter challenges the restitution to Northstar Borough and the Department of Labor on the basis that these employers will receive windfalls if she is required to repay wages for work she actually performed. We disagree.

[1] The Mandatory Victims Restitution Act ("MVRA") requires courts to order restitution to victims of certain criminal offenses, such as mail fraud. *See* 18 U.S.C. § 3663A(c). The "purpose of restitution" under the MVRA, however, is not to punish the defendant, but to "make the victim[ ] whole" again by restoring to him or her the value of the losses suffered as a result of the defendant's crime. *United States v. Crandall*, 525 F.3d 907, 916 (9th Cir. 2008) (quoting *United States v. Gordon*, 393 F.3d 1044, 1052 n. 6 (9th Cir. 2004)).

The amount of restitution, therefore, "is limited to the victim's *actual losses*." *United States v. Bussell*, 504 F.3d 956, 964 (9th Cir. 2007); *see also Crandall*, 525 F.3d at 916. "[A]ctual loss for restitution purposes is determined by comparing what actually happened with what would have happened if the defendant had acted lawfully." *Bussell*, 504 F.3d at 964 (quotations and brackets omitted). We review the district court's application of the MVRA and its conclusion that Hunter's employers were victims of her crimes de novo. *United States v. De La Fuente*, 353 F.3d 766, 771 (9th Cir. 2003). Factual findings made in support of the restitution order are reviewed for clear error. *Id.* at 772.

**[2]** The district court had a clear legal and factual basis for ordering restitution to North Star Borough and the Department of Labor. Hunter was convicted of mail fraud under 18 U.S.C. § 1341. Accordingly, the district court was required to impose restitution for the amount of loss sustained by each victim directly and proximately harmed as a result of that offense. *See* 18 U.S.C. § 3663A(a)(2), (c)(1); *see also United States v. Johnson*, 297 F.3d 845, 872 (9th Cir. 2002) (noting that "an order of restitution to victims is mandatory" in cases involving mail fraud). Both Northstar Borough and the Department of Labor were directly and proximately harmed by Hunter's mail fraud because they paid for the services of a licensed nurse that were never received. *See Bussell*, 504 F.3d at 964. If Hunter had not mailed false documents reflecting fictitious nursing credentials, she could not legally have been employed in positions that required a valid nursing license, and a qualified licensed nurse could have been employed instead. *See id.*

The factual circumstances presented here are similar to those in the Sixth Circuit's decision in *United States v. Kaminski*, 501 F.3d 655 (6th Cir. 2007). In *Kaminski*, a criminal defendant was ordered to pay restitution to consumers who had purchased drugs, believing that the drugs were FDA approved. *Id.* at 669. Though the defendant argued that these

consumers did not suffer any harm because there was no evidence that the drugs were ineffective or otherwise detrimental, the Sixth Circuit disagreed. *Id.* at 670. Instead, the court held that "the 'economic harm to consumers' " is that "consumers who are deceived in this manner do not get what they pay for." *Id.* (citing *United States v. Universal Mgmt. Servs.,* 191 F.3d 750, 763 (6th Cir. 1999), *cert. denied,* 530 U.S. 1274 (2000)). Like the consumers in *Kaminski* who paid for a product that they never received, Northstar and the Department of Labor paid for nursing services that Hunter was not qualified to perform, and so did not get what they paid for. *See id.*

**[3]** We reject Hunter's assertion that the district court's restitution order should have deducted the value of services provided to these employers that did not require her to hold a nursing license. In this regard, the application notes to § 2B1.1 of the United States Sentencing Guidelines (U.S.S.G.), although not directly applicable, are instructive:

> In a case involving a scheme in which . . . services were fraudulently rendered to the victim by persons falsely posing as licensed professionals . . . loss shall include the amount paid for the . . . services . . . transferred, rendered, or misrepresented, with no credit provided for the value of those . . . services.

U.S.S.G. § 2B1.1, App. Note 3(f)(v). This provision of the Guidelines is not specific to the calculation of restitution awards, and calculating loss under the guidelines is not necessarily identical to loss calculation for purposes of restitution: Loss under the Guidelines includes actual *or* intended loss, while loss for restitution purposes covers only actual loss. *See United States v. Allen,* 529 F.3d 390, 396 (7th Cir. 2008); *see also Crandall,* 525 F.3d at 916 (noting the potential for different outcomes because loss under the Guidelines serves a punitive purpose, while restitution is limited to actual losses); *Bussell,* 504 F.3d at 964 (observing that a restitution award

should account for "actual loss"). But where, as here, the issue is absence of a legally required license for work performed, any distinction between intended and actual loss has no pertinence. *Compare Allen*, 529 F.3d at 397 (declining to rely on § 2B1.1, App. Note 3(f)(v) where the defendant represented himself as an expert, but "the profession in which he was scheming was not a licensed one"). Given that symmetry for present purposes, the § 2B1.1 application note supports the conclusion that the loss in this case requires no deduction for the value of work that Hunter performed when she was falsely acting as a nurse, or equivalently that the work Hunter performed had no legal value for purposes of calculating the victims' losses.

This conclusion accords with traditional principles of contract law. When an individual fails to comply with licensing requirements aimed at protecting health and safety rather than merely raising revenue, that individual can maintain "no action for the promised compensation or for quantum meruit." *See* 15 Corbin on Contracts § 88.4 (revised ed. 2003); 2 Farnsworth on Contracts § 5.6 (3d ed. 2004). This rule reflects the public policy concern that providing compensation to unlicensed individuals practicing in these fields might encourage fraud or undermine public health and safety. *See* 15 Corbin on Contracts § 88.4.

During Hunter's sentencing and at trial, the government presented evidence that North Star Borough and the Department of Labor lost $12,558 and $5,457 respectively in wages paid to Hunter. If Hunter had not acted unlawfully, her victims would not have paid any of these wages, or would have paid them for valuable services from a real, qualified nurse. *See id.* It is clear that the district court relied on this evidence in reaching its conclusion as to the amount of restitution. *See United States v. Peterson*, 538 F.3d 1064, 1077-78 (9th Cir. 2008) (upholding the amount of the district court's restitution order where the factual basis supporting the amount of restitution was clear from the record).

**AFFIRMED.**