NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| BRIANNA MARIE PETERSON,<br><br>Appellant,<br><br>v.<br><br>MUNICIPALITY OF ANCHORAGE,<br><br>Appellee. | Court of Appeals No. A-12891<br>Trial Court No. 3AN-16-06203 CR<br><br>O P I N I O N<br><br>No. 2710 — October 15, 2021 |

Appeal from the District Court, Third Judicial District, Anchorage, Douglas Kossler, Judge.

Appearances: Richard K. Payne, Denali Law Group, Anchorage, for the Appellant. Sarah E. Stanley, Assistant Municipal Prosecutor, and Rebecca A. Windt Pearson, Municipal Attorney, Anchorage, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge WOLLENBERG.

Brianna Marie Peterson was involved in a traffic accident that severely injured another driver. The Municipality of Anchorage charged her with one count of

driving with a revoked license, but did not bring any charges directly related to the accident.[1]

Peterson pleaded guilty to the single count of driving with a revoked license. At the sentencing hearing, the Municipality did not present any formal evidence or sworn testimony about the accident or the reasons for Peterson's revoked license. Nonetheless, the traffic accident figured prominently in the district court's decision to impose a term of imprisonment and to order restitution.

On appeal, Peterson challenges her sentence and the restitution order, contesting the court's reliance on an accident for which she was not separately charged or convicted. We conclude that — in the absence of a conviction related to the accident or any indication in the record that the losses were caused by Peterson's criminal conduct, as opposed to her negligence — restitution was improperly imposed in this criminal case and must be pursued in a separate civil action. However, we also conclude that, given the broad goals of sentencing and the purposes underlying the statutory prohibition on driving with a revoked license, the court could reasonably rely on the circumstances surrounding Peterson's criminal conduct in formulating her term of imprisonment, particularly since Peterson never contested that she was at least partially at fault for the accident.

We therefore reverse the restitution judgment, but otherwise affirm Peterson's sentence.

*Background facts*

According to the Municipality's charging document, in June 2016, Peterson was driving in the middle lane of the road when she allegedly turned in front of a bus that

---

[1] Former Anchorage Municipal Code (AMC) 09.28.019(B)(1) (pre-July 2016).

was being driven in the left lane. The driver of the bus swerved to avoid hitting Peterson's car, causing the bus to collide with a light pole. The bus driver was badly injured and hospitalized. When the police checked the status of Peterson's Washington driver's license, they discovered that it was revoked.

Although the Municipality charged Peterson with driving with a revoked license, Peterson was not charged with any additional criminal offenses arising out of the accident. Peterson ultimately pleaded guilty to a single count of driving with a revoked license, with sentencing open to the district court.

At sentencing, the court found an aggravating factor — that Peterson had prior criminal convictions similar in nature to the current offense.[2] The court was therefore authorized to impose a term of imprisonment of up to 1 year.[3]

The prosecutor argued that Peterson should be considered a worst offender and subjected to the maximum penalty, given her history of driving-related convictions and the severity of the accident. (Peterson had several prior driving-related convictions from Washington state: two prior convictions for driving while license suspended, one conviction for reckless driving, and one conviction for driving without a valid operating license.) The prosecutor also argued that the court should impose restitution for the accident.

Neither party presented any sworn testimony or formal evidence regarding the accident. (The prosecutor apparently submitted photographs of the scene to the court, but these photographs are not part of the appellate record.) The bus driver provided a statement in which he recounted the accident from his perspective: he saw

---

[2] Former AS 12.55.135(a)(1)(C) (2017). This statute became effective on July 12, 2016, and it applied to sentences imposed on or after the effective date for conduct occurring before, on, or after the effective date. SLA 2016, ch. 36, §§ 91, 185(u)(4), 188.

[3] Former AS 12.55.135(a)(1) (2017); AMC 08.05.020(H)(1).

the front tire of Peterson's van turn toward him, he "yanked" his steering wheel to try to avoid hitting her, and he then clipped Peterson's van and ran into the light pole. In her allocution, Peterson apologized for what happened. She said that she had consulted her GPS before pulling her car out and "was certain that there was a double-turn lane." She nonetheless acknowledged "that does not excuse me being behind the wheel of a car."

Peterson's attorney argued that the accident was not a foreseeable consequence of driving with a revoked license, and that therefore the court should not take it into consideration at sentencing. The attorney also argued that any restitution should be pursued separately through a civil case, where fault could be apportioned between the parties. The attorney noted that the bus driver stated that when he saw Peterson turn her wheel, he took some evasive action, and that it was unclear how a civil jury would evaluate the relative responsibility of the parties.

In its sentencing comments, the court found that "it was foreseeable that . . . an accident would occur."[4] In particular, the court found that Peterson's history of driving offenses suggested that she had not learned the rules of the road and that, as a result, she put people at risk when she drove. Accordingly, the court found that there was a nexus between Peterson's driving with a revoked license and the accident itself.

Based on Peterson's criminal history and the harm to the bus driver, the court imposed a sentence of 365 days with 190 days suspended (175 days to serve). The court also ordered Peterson to pay restitution for the accident, and, pursuant to Alaska

---

[4] The court cited two cases in support of its ruling: *Johnson v. State*, 224 P.3d 105, 105-06 (Alaska 2010) (discussing the standard of foreseeability in criminal prosecutions based on reckless conduct); *Brown v. Anchorage*, 764 P.2d 322, 323 (Alaska App. 1988) ("Although causing injury to another person is not an element of the offense of driving while intoxicated, it is a foreseeable result of this conduct and aggravates the offense.").

Criminal Rule 32.6(c)(2), the court gave the Municipality ninety days to file a proposed restitution amount.

After the Municipality filed a proposed restitution judgment, the court ordered restitution totaling $38,831.20 — $30,460 to the bus driver (for lost wages and transportation costs) and $8,371.20 to the Municipality of Anchorage (for damage caused by the bus to the light pole).

Peterson now appeals her sentence, arguing that the court erred in considering the accident when formulating a term of imprisonment and in imposing restitution.

*Why we reverse the restitution order*

We first address the restitution order. Peterson was convicted, under AMC 09.28.019(B)(1), of driving with a revoked license. This ordinance prohibits a person, acting with criminal negligence as to the status of their driver's license, from driving a motor vehicle when that person's license has been revoked.[5] To be liable under this ordinance — or the state counterpart, AS 28.15.291(a) — a person need not cause an injury or accident while driving with the revoked license.

Peterson argues that the restitution order is improper because the crime of driving with a revoked license is a regulatory offense without a direct victim. She notes that the ordinance prohibiting driving with a revoked license does not contain any

---

[5] Peterson was convicted under the pre-July 2016 version of this ordinance. A month after Peterson committed her offense, the Anchorage Assembly amended this portion of the ordinance, AMC 09.28.019(B)(1), to make it applicable only to those whose licenses were revoked based on the commission of certain prior offenses. See *infra* footnote 15 for a further description of this amendment.

element involving injury or a risk of injury, and contends that evidence about the accident would likely have been inadmissible had she proceeded to trial on the charge.

Alaska's restitution statutes provide that, unless a victim declines restitution, a court shall order restitution for the actual damages or loss caused by the conduct for which the defendant was convicted.[6] In particular, AS 12.55.045(a) authorizes restitution, as a direct component of a sentence, "to the victim or other person injured by the offense[.]"[7] And AS 12.55.100(a)(2)(B) authorizes restitution, as a condition of probation, "to aggrieved parties for actual damages or loss caused by the crime for which conviction was had[.]" We have previously held that restitution under both statutes "should be assessed according to the damages or loss arising from the defendant's crime[.]"[8]

---

[6] *Welsh v. State*, 314 P.3d 566, 567 (Alaska App. 2013) (discussing AS 12.55.045(a) (authorizing restitution as a direct component of a sentence) and AS 12.55.100(a)(2)(B) (authorizing restitution as a condition of probation)).

[7] *See also* AS 12.55.045(a)(1)-(2) (providing that, in determining the amount of restitution, the trial court shall consider the "public policy that favors requiring criminals to compensate for damages and injury" and the "financial burden placed on the victim and those who provide services to the victim and other persons injured by the offense as a result of the criminal conduct of the defendant").

[8] *Welsh*, 314 P.3d at 568. In this case, the district court imposed restitution as a direct component of Peterson's sentence. Neither party contests the application of AS 12.55.045(a) — the state statute authorizing restitution as a direct component of a defendant's sentence — to Anchorage municipal crimes, and we therefore assume for purposes of this appeal that it does. We have previously held that the Anchorage Municipal Code permits the imposition of restitution as a condition of probation. *See Lock v. Anchorage*, 1982 WL 889390, at *2 (Alaska App. Nov. 17, 1982) (unpublished) (noting that AMC 08.50.020(E), the sentencing provision of the Anchorage Penal Code, incorporates by reference AS 12.55.100, which authorizes the imposition of restitution as a condition of probation).

The strict elements of the crime of conviction do not necessarily define the parameters of a potential restitution order.[9] However, a court cannot award restitution for uncharged conduct that is distinct from the conduct that resulted in the conviction,[10] unless the parties have agreed that the defendant will be subject to such a restitution order.[11] That is, the damages for which restitution is ordered must be caused by the criminal conduct for which the defendant was convicted, not additional uncharged conduct.[12]

Peterson was not charged with reckless or careless driving, offenses which would require the Municipality to demonstrate the *manner* in which Peterson drove.[13]

---

[9]    *See Farmer v. State*, 449 P.3d 1116, 1124-25 (Alaska App. 2019); *Harris v. State*, 678 P.2d 397, 408 (Alaska App. 1984), *rev'd on other grounds by Stephan v. State*, 711 P.2d 1156 (Alaska 1985); *Fee v. State*, 656 P.2d 1202, 1205 (Alaska App. 1982).

[10]    *See, e.g.*, *Nelson v. State*, 628 P.2d 884, 895-96 (Alaska 1981) (reversing restitution order for items stolen in uncharged burglaries); *Schwing v. State*, 633 P.2d 311, 313-14 (Alaska App. 1981) (reversing award of restitution for three uncharged cocaine sales made to an informant).

[11]    *Kimbrell v. State*, 666 P.2d 454, 455 (Alaska App. 1983) (holding that a court may impose restitution for a separate, dismissed charge only if, *inter alia*, "the defendant admits, and there is no factual question as to whether, the defendant caused or was responsible for the aggrieved party's loss," and "the defendant consents, freely and voluntarily, to make full restitution").

[12]    *See id.* (holding that "restitution cannot be required in an amount greater than the loss or damage caused by the offense for which a defendant is convicted"); *Yannello v. State*, 2014 WL 1691542, at *5 (Alaska App. Apr. 23, 2014) (unpublished) ("Under Alaska law, the courts are limited to awarding restitution only for actual damages or losses arising from a defendant's crime." (citing *Welsh*, 314 P.3d at 568)).

[13]    *See* AMC 09.28.010 (reckless driving); AMC 09.28.015 (careless driving); *see also* AS 28.35.400 (state statute prohibiting reckless driving); AS 28.35.410 (state statute prohibiting negligent driving).

Instead, the ordinance only required the Municipality to show that Peterson drove her vehicle — and that she did so with a revoked license (and with criminal negligence as to the status of her license).[14] Moreover, there was no agreement that Peterson would pay restitution for the traffic accident, and the Municipality presented no evidence as to the reasons why Peterson's license was revoked.[15] Given this background, the question is whether Peterson's role in the traffic accident can fairly be considered part of the conduct for which she was convicted.

Alaska courts have not previously addressed the question of whether a defendant can be ordered to pay restitution for a traffic accident that occurred while the defendant was driving with a revoked license, where the sole charge and conviction was driving with a revoked license. But several other state courts have held that the mere

---

[14] Former AMC 09.28.019(B)(1) (pre-July 2016).

[15] Peterson was charged under the pre-July 2016 version of AMC 09.28.019(B)(1) that made it unlawful for a person, with criminal negligence as to the status of their driver's license, to "[d]rive a motor vehicle at a time when that person's driver's license, privilege to drive, or privilege to obtain a license has been canceled, suspended[,] or revoked in this or another jurisdiction." *See* former AMC 09.28.019(B)(1) (pre-July 2016). The basis for the license revocation was not a specified element of the offense. The current ordinance, which was enacted in July 2016, makes it a misdemeanor for a person to drive with a revoked license only if their license was revoked for a specific reason — *i.e.*, for previously driving under the influence or refusing to submit to a chemical test. AMC 09.28.019(B)(1) & (C)(1); *see also* Anchorage Emergency Ordinance (EO) No. 2016-1, §§ 3-4 (July 12, 2016); Anchorage Ordinance (AO) No. 2016-83(S), §§ 5-6 (July 26, 2016). (Other instances of driving with a revoked license are now classified as minor offenses.) The amended definition of the crime did not apply to Peterson because she committed her offense in June 2016.

occurrence of an accident while the defendant is driving with a revoked license is insufficient to justify an order of restitution against the defendant.[16] For instance, at least two courts have held that restitution for injuries sustained as a result of an accident in which the defendant was driving with a revoked or suspended license is inappropriate in a criminal case, and should instead be resolved through a separate, civil action.

In *State v. McDonough*, McDonough was involved in an accident when the vehicle he was operating collided with a taxicab.[17] McDonough was driving on a suspended license, and he later pleaded no contest to this charge. At sentencing, the trial court ordered McDonough to pay restitution to compensate the taxi driver for his financial losses and medical bills.[18]

The Maine Supreme Judicial Court vacated the restitution judgment.[19] The court explained that while it was possible that McDonough was negligent in causing the accident, "negligent operation is not an element of the crime of [driving with a suspended license], and therefore, the conviction [did] not establish that McDonough was negligent or that his negligence was the cause of the damages" to the taxi driver.[20] The court held that, absent an agreement between the parties that the defendant would pay restitution, "there [was] no nexus between the act of driving while one's license is suspended and

---

[16] *See People v. Taylor*, 179 Cal.App.3d Supp. 1, 12, 225 Cal.Rptr. 430, 436 (Cal. App. 1986); *Schuette v. State*, 822 So.2d 1275, 1283 (Fla. 2002); *State v. McDonough*, 968 A.2d 549, 551 (Me. 2009); *State v. LaFlam*, 965 A.2d 519, 521 (Vt. 2008).

[17] *McDonough*, 968 A.2d at 550.

[18] *Id.* at 550.

[19] *Id.* at 551.

[20] *Id.*

driving negligently so as to cause an accident" — and that McDonough's liability for the accident could instead be pursued in a separate civil action.[21]

In *State v. LaFlam*, the defendant drove his van through the front of a store, causing damage to the building.[22] At the time of the accident, the defendant's driver's license was suspended for driving under the influence. Following a jury trial, the defendant was convicted of driving with a suspended license, and he was ordered to pay restitution for the damage to the building.[23]

The Vermont Supreme Court vacated the restitution order.[24] The court acknowledged that LaFlam had caused the damage to the store by driving his vehicle through the front door. But the court also noted that LaFlam was never charged with a crime directly connected to that act, and was instead only convicted of driving with a suspended license. Like the Maine court, the Vermont court explained that the damage for which restitution is ordered must be caused by the criminal act for which the defendant was convicted — and that the defendant's criminal act must be both a cause-in-fact and the proximate cause of the damage.[25] The court concluded that LaFlam's failure to have a license was simply a condition and not a proper cause of the damage:

> While [the] defendant should not have been driving in light of his license suspension, we do not see how the license suspension alone can be deemed a proximate cause of the victim's injuries. Driving without a license, [the] defendant

---

[21]   *Id.* ("If McDonough's driving was negligent, as well as illegal, his liability for the accident can be established through a separate, civil action.").

[22]   *State v. LaFlam*, 965 A.2d 519, 520 (Vt. 2008).

[23]   *Id.*

[24]   *Id.* at 524.

[25]   *Id.* at 521-22.

could have driven negligently or safely. An accident could have been caused by another driver's negligence or by forces outside [the] defendant's control.[26]

Two other courts have vacated restitution orders issued under similar circumstances, but left open the possibility that restitution could be ordered under certain narrow circumstances where the government has shown that the accident was the natural and proximate consequence of the criminal act of driving on a revoked license.[27] In each instance, however, the courts determined that the government had failed to meet that burden.[28]

Like the majority of states that have addressed this question,[29] Alaska employs a test of proximate causation in evaluating claims for restitution in a criminal case.[30] Thus, in order to obtain a restitution order in this case, the Municipality was required to show both that Peterson's criminal conduct — *i.e.*, her act of driving with a revoked license — was a cause in fact (a "but for" cause) of the losses incurred, and also

---

[26]   *Id.* at 523.

[27]   *Schuette v. State*, 822 So.2d 1275, 1283-84 & n.9 (Fla. 2002); *People v. Taylor*, 179 Cal.App.3d Supp. 1, 12-13, 225 Cal.Rptr. 430, 436-37 (Cal. App. 1986).

[28]   *Schuette v. State*, 822 So.2d at 1284; *People v. Taylor*, 179 Cal. App.3d Supp. at 12.

[29]   *See, e.g.*, *Taylor*, 179 Cal.App.3d Supp. at 12; *Schuette*, 822 So.2d at 1283; *State v. McDonough*, 968 A.2d 549, 551 (Me. 2009); *LaFlam*, 965 A.2d at 521 (all applying a proximate causation test for the imposition of restitution). The Washington Court of Appeals has upheld an award of restitution for an accident that occurred while the defendant was driving with a suspended license (and was convicted of that charge), but the court applied solely a "but for" theory of causation. *State v. Harris*, 327 P.3d 1276, 1279-80 (Wash. App. 2014).

[30]   *See Ned v. State*, 119 P.3d 438, 446 (Alaska App. 2005) (rejecting a standard of causation limited to "but for" causation because that would extend the scope of restitution beyond the amount that could lawfully be awarded in a civil case).

that the losses were a natural and proximate result of Peterson's criminal conduct to which liability should attach.[31] Stated differently, the Municipality was required to show that Peterson's criminal conduct was a "substantial factor" in bringing about the ensuing damage.[32] It was not enough for the Municipality to show that but-for Peterson's driving, the accident would not have occurred.

As cases from other states demonstrate, establishing a proximate cause connection under these circumstances is exceedingly difficult. The act of obtaining a license does not guarantee that the driver will not cause accidents, and the fact that a defendant's license was suspended or revoked does not necessarily make it more likely that the person will be responsible for an accident in the future.[33]

---

[31] *See id.*; *see also Paroline v. United States*, 572 U.S. 434, 446, 449-50 (2014) (recognizing that "[p]roximate cause is a standard aspect of causation in criminal law and the law of torts," and discussing the need to establish both causation in fact and proximate causation with respect to a federal restitution statute); *Howarth v. State, Pub. Def. Agency*, 925 P.2d 1330, 1333 (Alaska 1996) (explaining that "legal cause encompasses two concepts" — actual (or "but-for") causation and causation grounded in legal policy, which asks "whether the conduct has been so significant and important a cause that the defendant should be legally responsible" (internal quotations and citations omitted)).

[32] *See State v. Malone*, 819 P.2d 34, 36 (Alaska App. 1991) ("A criminal defendant can be held responsible only for injuries that 'result from' or are 'caused by' his conduct. But the defendant's conduct need not be the sole factor in producing the injury. Rather, the test is whether the defendant's conduct was a 'substantial factor' in bringing about the result.").

[33] *See LaFlam*, 965 A.2d at 523; *see also State v. Bakka*, 826 A.2d 604, 611 (N.J. 2003) ("Unlike driving while intoxicated, speeding, or some other conduct from which a reckless state of mind may be inferred circumstantially, the mere fact that a defendant is an unlicensed driver does not by itself suggest an awareness of risk."); *cf. Brown v. Anchorage*, 764 P.2d 322, 323 (Alaska App. 1988) ("Although causing injury to another person is not an element of the offense of driving while intoxicated, it is a foreseeable result of this conduct and aggravates the offense.").

Indeed, in the tort context, driving without a valid license does not generally constitute evidence of negligence. In that context — *i.e.*, in a civil lawsuit arising from a traffic accident — the majority of jurisdictions have held that evidence that one of the parties drove in violation of a driver's license restriction is not admissible on the question of negligence in the absence of a causal connection between the violation and the injury.[34] This is because the defendant's "status as a licensed or unlicensed driver" does not tend to prove or disprove "whether the manner in which [the defendant] operated [their] vehicle was a substantial factor in causing the accident."[35]

Moreover, as we previously noted, negligent operation is not an element of the crime of driving with a revoked license. Accordingly, awarding restitution for driving with a revoked license requires a trial court not only to make findings about the amount of loss and damages (findings that are standard in the restitution context), but

---

[34] *See Schuette*, 822 So.2d at 1283-84 (discussing *Brackin v. Boles*, 452 So.2d 540, 545 (Fla. 1984)); *see also Taylor*, 179 Cal.App.3d Supp. at 6 ("In California, as in most jurisdictions, it has long been the rule in both civil and criminal cases that evidence that a driver is unlicensed is not admissible on the issue of negligence as the cause of an accident."); *Rentschler v. Lewis*, 33 S.W.3d 518, 519 (Ky. 2000) (holding that the defendant's status as a licensed or unlicensed driver was irrelevant in a tort case because it would not tend to prove or disprove whether the manner of his driving caused the accident); *LaFlam*, 965 A.2d at 522-23 (discussing *Dervin v. Frenier*, 100 A. 760, 761 (Vt. 1917), which held that the trial court erred in admitting, in a tort case, evidence that the defendant — who ran over a pedestrian — did not have a driver's license, finding that this illegality was "a mere condition and not a cause of the plaintiff's injury").

[35] *Rentschler*, 33 S.W.3d at 519; *see also Ardinger v. Hummell*, 982 P.2d 727, 735 n.29 (Alaska 1999) (recognizing that a plaintiff is not precluded from recovering civil damages arising out of an accident simply because the plaintiff was operating their vehicle without a license, at least "absent a causal connection between the lack of a license and the resulting injuries").

also to make additional findings about a defendant's *conduct* — findings beyond those that are inherent in the criminal conviction itself.[36]

Under our restitution statute, this is not permitted. We have previously stated that "consideration of the precise crime for which [a defendant] was convicted is of paramount importance" in determining whether a person is an "aggrieved party" for purposes of restitution.[37] In *Pena v. State*, the defendant was convicted of manslaughter after he drove under the influence and collided with another vehicle, injuring the driver of the other vehicle and killing the passenger.[38] We upheld an order of restitution for property damages and injuries sustained by the driver since those losses "were unquestionably the consequence of precisely the same conduct and intent on Pena's part as the conduct and intent that caused the death with which Pena was charged and . . . convict[ed]."[39]

Similarly, in a pair of cases — *Nelson v. State* and *Schwing v. State* — the Alaska Supreme Court and this Court held that only losses caused by the conduct underlying the conviction are compensable in restitution. These courts therefore reversed the award of restitution for items stolen in uncharged burglaries and uncharged

---

[36] *See State v. Baker*, 177 A.3d 1093, 1100 (Vt. 2017) ("[B]ecause restitution is triggered by a conviction, the harm for which a defendant pays restitution must be a directly foreseeable result of the criminal act that leads to a conviction.").

[37] *Pena v. State*, 664 P.2d 169, 178 (Alaska App. 1983) (citing AS 12.55.100(a)(2)), *rev'd on other grounds*, 684 P.2d 864 (Alaska 1984).

[38] *Id.* at 171.

[39] *Id.* at 178; *see also Farmer v. State*, 449 P.3d 1116, 1124-26 (Alaska App. 2019) (holding that, where the defendant did not contest her criminal responsibility for causing the victim's damages and losses, restitution was not limited by the statutory maximum damages threshold that defined the *degree* of offense).

drug sales, respectively.[40] The United States Supreme Court — interpreting a federal restitution statute — has likewise held that a defendant who pleaded guilty to a single count of use of an unauthorized credit card could not be ordered to pay restitution for losses occasioned by additional stolen credit cards, notwithstanding the fact that the government proffered evidence that the defendant had stolen these additional cards.[41] In doing so, the Supreme Court rejected the position taken by several circuit courts that a defendant could be ordered to pay restitution for additional conduct for which the defendant was not convicted.[42]

Here, the prosecutor did not present any evidence about why Peterson's license was revoked. The court stated that it "believe[d]" Peterson never got her license and therefore never learned the rules of the road, but acknowledged that it had "not looked into this."[43] This information was critical to the court's determination that there

---

[40] *See Nelson v. State*, 628 P.2d 884 (Alaska 1981) (reversing restitution order for items stolen in uncharged burglaries); *Schwing v. State*, 633 P.2d 311 (Alaska App. 1981) (reversing award of restitution for three uncharged cocaine sales made to an informant).

[41] *Hughey v. United States*, 495 U.S. 411, 413 & n.1, 414-16 (1990) (interpreting former 18 U.S.C. § 3579 (1987), which authorizes federal courts to order "a defendant convicted of an offense" to "make restitution to any victim of such offense"; now codified at 18 U.S.C. § 3663); *see also Paroline v. United States*, 572 U.S. 434, 445 (2014) (interpreting a different federal restitution statute as "intended to compensate victims for losses caused by the offense of conviction").

[42] *See Hughey*, 495 U.S. at 415 n.2 (citing *United States v. Berrios*, 869 F.2d 25, 32 (2d Cir. 1989) and *United States v. Duncan*, 870 F.2d 1532, 1537 (10th Cir. 1989)).

[43] We note that the judgments for Peterson's prior convictions for driving with a revoked license suggest that she was otherwise eligible for reinstatement of her license.

was a causal link between Peterson's criminal conduct and the damages arising from the accident, since a license can be revoked for reasons unrelated to a person's driving.[44]

In addition, the district court justified its restitution order by finding that Peterson violated the rules of the road when she "turned into another lane" and "caused the accident." But this is essentially a finding of negligence untethered from Peterson's criminal conviction — a finding regarding her underlying conduct for which Peterson was not charged or tried. Indeed, if Peterson had originally been charged with recklessly causing physical injury to the bus driver, and the charge dismissed as part of her plea agreement with the Municipality with no agreement to pay restitution for his injuries, our case law would not permit the imposition of restitution.[45]

We acknowledge that the state's licensing requirements, and the related driving with a revoked license statute, serve important purposes. The state has a strong interest in ensuring that its drivers are properly trained and know the rules of the road.[46] And we have previously recognized that the restitution statutes should be construed

---

[44] *See, e.g.*, AS 28.15.187 (providing for revocation of a driver's license or privilege to drive when a person has used a driver's license as a false or fraudulent identification).

[45] *See Kimbrell v. State*, 666 P.2d 454, 455 (Alaska App. 1983).

[46] *Cf. Smith v. State*, 756 P.2d 913, 915-16 (Alaska App. 1988) (holding that reasonable suspicion that a person is driving with a suspended license is a legitimate basis for a traffic stop on the ground that the person may pose an imminent public danger to other motorists); *State v. Zerkel*, 900 P.2d 744, 752 (Alaska App. 1995) (recognizing that license revocation is "akin to a restraining order or injunction, protecting the public from future harm by depriving an unsafe or irresponsible driver of his or her authority to continue to operate motor vehicles").

broadly to effectuate the legislature's purpose of compensating victims and other people fully for losses caused by the defendant's criminal conduct.[47]

But without a link between the losses for which restitution was ordered and Peterson's criminal conduct,[48] awarding restitution under these circumstances would penalize Peterson for conduct for which she was not convicted nor afforded the right to a jury trial under the Sixth Amendment.[49] The risk is too great that a restitution order under these circumstances will "require[] payment for damage which was caused by noncriminal conduct."[50]

This does not mean that a victim is without recourse when an unlicensed driver negligently causes an accident. Rather, the victim is free to sue the defendant in a tort action for negligence. Such an action ensures that the victim can recover for any damages caused by the defendant's negligence. It also ensures that the defendant is entitled to the substantive protections (*e.g.*, the ability to argue comparative fault) and

---

[47] *See* AS 12.55.045(a)(1) & (2); *see also Maillelle v. State*, 276 P.3d 476, 479 (Alaska App. 2012) (noting the Alaska Legislature has made it plain that it intends Alaska's restitution statute to be construed broadly).

[48] *See Hughey v. United States*, 495 U.S. 411, 420-21 (1990) (rejecting the notion that the expansive declaration of purpose behind the restitution statute should be read to require restitution for acts outside the offense of conviction).

[49] U.S. Const. amend. VI & Alaska Const. art. I, § 11 (providing for the right to a jury trial in criminal prosecutions); *see also Hester v. United States*, 139 S.Ct. 509, 509-11 (2019) (Gorsuch, J., dissenting from the denial of certiorari) (noting that, to the extent restitution is beyond the purview of the Sixth Amendment's right to a jury trial in *criminal* prosecutions, then the Seventh Amendment's right to a jury trial in *civil* cases would seemingly be implicated).

[50] *People v. O'Rourke*, 105 Cal.App.3d Supp. 1, 4, 165 Cal.Rptr. 92 (Cal. App. 1980).

procedural protections (*e.g.*, a jury trial) that are not generally available in a criminal restitution hearing.

Accordingly, for the reasons discussed, we reverse the restitution order.


*Why we affirm Peterson's term of imprisonment*

Peterson also argues that, because causing an injury or accident is not an element of the offense for which she was convicted, the court erred when it considered the accident and injuries to the bus driver when imposing her sentence. But the information germane to sentencing is not so restricted, either by statute or case law.[51] In formulating a sentence of imprisonment, a court "may consider any facts relevant to the defendant's reformation or the need to protect the community from the defendant or those similarly situated, which are verified in the record."[52]

The goals of sentencing, as set out in AS 12.55.005, are broad, and under this statute, judges are required to consider "the circumstances of the offense" when

---

[51]  *See* AS 12.55.005(4) (requiring the sentencing court to consider "the circumstances of the offense and the extent to which the offense harmed the victim or endangered the public safety or order").

[52]  *Huckaby v. State*, 632 P.2d 975, 976 n.2 (Alaska App. 1981); *see also Nukapigak v. State*, 562 P.2d 697, 701 n.2 (Alaska 1977), *aff'd on rehearing*, 576 P.2d 982 (Alaska 1978) (noting allegations of misconduct must be "corroborated or substantiated by supporting data or information" in order to be considered at sentencing); *Grandstaff v. State*, 171 P.3d 1176, 1211 (Alaska App. 2007) ("A trial judge may consider evidence of prior uncharged misconduct at a defendant's sentencing if the misconduct is verified."); *Brakes v. State*, 796 P.2d 1368, 1371-72 (Alaska App. 1990) (holding that a sentencing judge may rely on any information that is verified in the record, even conduct for which the defendant was acquitted, given the differing burdens of proof); *Willard v. State*, 662 P.2d 971, 975 (Alaska App. 1983) (discussing the court's reliance on uncharged allegations of sexual assault at sentencing).

imposing a sentence.[53]  Judges also maintain considerable discretion in formulating an appropriate sentence.[54]

Here, the district court evaluated the totality of the circumstances and the *Chaney* criteria (as codified in AS 12.55.005), identifying deterrence and isolation as the primary reasons for a more substantial term of imprisonment.[55]  The court found that Peterson's potential for rehabilitation was "extremely guarded" given her history of driving offenses.  And ultimately, although the court considered the extent to which the offense harmed the bus driver, the court focused "in particular" on Peterson's criminal history and the need for personal deterrence in imposing the sentence.

One of the primary purposes of the prohibition on driving with a revoked license is to protect the public.  And the prohibition on driving with a revoked license, together with the attendant penalties for violating the statute, is designed in part to deter persons with suspended licenses from driving on public highways.[56]  Given Peterson's history of driving-related convictions, and the totality of the circumstances, we cannot say that the sentence imposed is clearly mistaken.[57]

---

[53]  AS 12.55.005(4).

[54]  *Erickson v. State*, 950 P.2d 580, 586 (Alaska App. 1997).

[55]  *See State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).

[56]  *Cf. State v. Fearick*, 350 A.2d 227, 229-30 (N.J. 1976) (upholding, against constitutional challenge, mandatory minimum jail term for defendant involved in accident while driving with a suspended license, notwithstanding defendant's undisputed lack of fault for the accident, in part because the mandatory jail term "provides additional deterrence for those who drive while their licenses are revoked").

[57]  *McClain v. State*, 519 P.2d 811, 813-14 (Alaska 1974).  Peterson also argues that she was prejudiced when the Municipality initially sought to rely on a second aggravating factor — former AS 12.55.135(a)(1)(B) (2017) (most serious conduct included in the definition of

(continued...)

We acknowledge that it may appear at least facially inconsistent to conclude that a court cannot rely on uncharged conduct as the basis for a restitution order, while at the same time endorsing the court's reliance on that same conduct in crafting a term of imprisonment. But under the restitution statute, a defendant's liability is limited to the proximate effects of the offense of conviction, since restitution is intended to allow crime victims and others who have suffered losses as a result of a defendant's criminal conduct to recover monetary damages that would otherwise be subject to recovery only in a civil suit.[58] Without such a limitation — and in the absence of an agreement to pay restitution for uncharged conduct — defendants would lack notice of the permissible scope of their financial liability, and their liability would be without any apparent limit.[59]

In contrast, the permissible term of imprisonment for a given criminal conviction is subject to a statutory maximum — a limit that the court may not exceed, regardless of the defendant's uncharged conduct. So long as a defendant has notice and an opportunity to contest the conduct on which the court relies, and the court makes appropriate findings regarding the defendant's conduct and how that conduct relates to

---

[57] (...continued)
the offense). But having reviewed the record, we see no discernible prejudice to Peterson since the Municipality withdrew this aggravating factor prior to sentencing and Peterson conceded that her prior convictions established the aggravator on which the court ultimately relied.

[58] *See Ned v. State*, 119 P.3d 438, 446 (Alaska App. 2005).

[59] *See State v. Baker*, 177 A.3d 1093, 1100 (Vt. 2017) ("[B]ecause restitution is triggered by a conviction, the harm for which a defendant pays restitution must be a directly foreseeable result of the criminal act that leads to a conviction.").

the *Chaney* criteria, we have held that a court may rely even on conduct for which the defendant was acquitted in formulating an appropriate sentence.[60]

*Conclusion*

For these reasons, we REVERSE the order of restitution. We otherwise AFFIRM the judgment of the district court.

---

[60] *See Brakes v. State*, 796 P.2d 1368, 1372 (Alaska App. 1990) (permitting sentencing judges to rely on conduct for which a defendant was acquitted in enhancing a defendant's term of imprisonment — if the judge concludes, based on substantial evidence, that the defendant actually committed the crime for which he was acquitted).