NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

JONG H. CHOI,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-13273
Trial Court No. 3AN-13-07542 CR

O P I N I O N

No. 2744 — April 7, 2023

Appeal from the Superior Court, Third Judicial District, Anchorage, Kevin M. Saxby, Judge.

Appearances: Kelly Taylor, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Donald Soderstrom, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge HARBISON.

Jong H. Choi was convicted, pursuant to a plea agreement, of two counts of medical assistance fraud.[1] As part of his sentence, Choi was ordered to pay restitution to the Alaska Department of Health and Social Services (DHSS). The restitution order required Choi to reimburse DHSS for payments it made for personal care assistance that Choi provided to Medicaid recipients at a time when he knew he was legally ineligible to provide these services.

Choi appeals, arguing that the restitution award exceeded DHSS's actual loss. Choi contends that he provided the personal care services despite being legally barred from doing so, and he asserts that, as a result, there is no evidence that DHSS suffered any actual damages or loss requiring restitution. In the alternative, he asserts that the superior court should have deducted the value of the services he provided from the restitution award. He also claims that the State bore the burden of proving both that he did not actually perform the personal care services and that DHSS did not already receive payments for its loss from another source.

For the reasons we explain in this opinion, we conclude that Choi was not entitled to an offset for any services he performed. We also conclude that, under the facts of this case, the superior court's failure to require the State to prove whether DHSS had already been reimbursed for the losses resulting from Choi's conduct was not plain error.

*Facts and proceedings*

Choi worked as a personal care assistant and was employed by C Care Services. In the charging document in this case, the State provided the following explanation of how Medicaid compensates personal care assistants (PCAs):

---

[1]    AS 47.05.210(a)(1), (5).

PCAs are health care providers that the Alaska Medicaid Program pays to provide home based healthcare services which will allow Medicaid recipients to stay in their home rather than be placed in a nursing home type setting. Medicaid recipients are evaluated for their healthcare needs and a PCA is then hired by the recipient to provide those needs in the recipient's home. The PCA fills out a timesheet for the work done and submits it to a PCA agency that in turn bills Medicaid [through DHSS]. Medicaid pays approximately $24 an hour to the agency and the agency must pay the PCA at least half of that amount.

In July 2008, DHSS informed C Care that Choi was barred from continuing to work as a personal care assistant because he had been charged with a barrier crime — *i.e.*, a crime that, by regulation, prevented him from being approved to work as a personal care assistant and from receiving payments from Medicaid.[2] In January 2010, Choi asked to return to work. He represented to C Care that the charge had been dismissed, and he provided C Care with dismissal paperwork. In fact, Choi had pleaded guilty to the crime, and the paperwork he provided was from a different, unrelated case. C Care then reinstated Choi, and Choi resumed working — including billing and receiving payments from DHSS.

In December 2010, DHSS informed C Care that Choi was still barred from working as a personal care assistant. After this, Choi continued to work as a personal care assistant, but he signed the name of his wife (who was also a personal care assistant employed by C Care) on his Medicaid billing timesheets. Choi submitted Medicaid billing timesheets under his wife's name through March 2012.

---

[2] *See* 7 Alaska Administrative Code (AAC) 10.900(a)(1) (explaining that one purpose of the barrier crimes regulations is to identify crimes that would bar an individual from approval by DHSS and from receiving Medicaid payments).

In 2013, the State launched an investigation into C Care and learned of Choi's conduct.[3] The State charged Choi with three counts of medical assistance fraud.

The first count alleged that Choi "knowingly submit[ted] or authorize[d] the submission of a claim to a medical assistance agency for property, services, or a benefit with reckless disregard that [he was] not entitled to the property, services, or benefit."[4] This count was based on his signing his wife's name on timesheets from December 2010 through March 2012.

The second count alleged that Choi "knowingly prepare[d] or assist[ed] another person to prepare a claim for submission to a medical assistance agency for property, services, or a benefit with reckless disregard that [he was] not entitled to the property, services, or benefit."[5] This count was based on his submitting Medicaid timesheets from January 2010 through November 2010, at a time when he was barred from receiving Medicaid payments due to his conviction for a barrier crime.

The third count alleged that Choi "knowingly ma[de] a false entry in or falsely alter[ed] a medical assistance record."[6] This count related to both his signing of his wife's name and his submitting Medicaid timesheets when he was barred from receiving Medicaid payments due to his criminal conviction.

Choi pleaded guilty, pursuant to a plea agreement, to the first and third counts. (The second count was dismissed.) The parties initially agreed that Choi would

---

[3]  The State's investigation revealed that C Care had received over $1.4 million in overpayments as a result of Medicaid billing fraud. In May 2015, C Care's owner entered into a plea agreement, agreeing not to appeal certain overpayment and restitution findings. *Arcticorp v. C Care Services, LLC*, 424 P.3d 365, 366 (Alaska 2018).

[4]  AS 47.05.210(a)(1).

[5]  AS 47.05.210(a)(2).

[6]  AS 47.05.210(a)(5).

be ordered to pay $67,435.59 in restitution, and the prosecutor further agreed that if the State were to successfully recover any portion of DHSS's loss from C Care, Choi's restitution obligation would be reduced by that amount. But Choi later filed an application for post-conviction relief arguing that his defense attorney had provided him with ineffective assistance of counsel when litigating the restitution amount. The State and Choi ultimately stipulated that Choi would withdraw his application for post-conviction relief, and in exchange, the State would agree to a *de novo* restitution hearing in Choi's underlying criminal case.

The superior court accordingly conducted a *de novo* restitution hearing. At the hearing, the only witness was a forensic accountant for the Medicaid Fraud Control Unit of the Department of Law. This witness testified that Medicaid, through DHSS, paid C Care $62,043.77 based on timesheets that Choi submitted — either under his or his wife's name — beginning in January 2010 when he lied about his criminal charge being dismissed. The witness testified that Cecelia DeLeon, the owner of C Care, had also been convicted of a crime and ordered to pay restitution. However, the witness did not know whether DeLeon had paid any restitution and, if so, whether it was for the same loss as that caused by Choi's conduct.

The State argued that the court should award DHSS $62,043.77 in restitution because the payments to C Care reflected the actual damages or loss that DHSS suffered. The superior court agreed with the State's argument and entered a restitution judgment in that amount.

This appeal followed.

*Why we conclude that the superior court did not err in determining the amount of loss caused by Choi's crimes*

The purpose of the restitution statutes is to "make full restitution available to all persons who have been injured as a result of criminal behavior, to the greatest extent possible."[7] Alaska's restitution statutes accordingly provide that, unless a victim declines restitution, a court must order restitution for the loss caused by the conduct for which the defendant was convicted.[8]

This Court has previously explained that restitution should be assessed according to the actual damages or loss arising from the defendant's crime, and not the amount of the defendant's unjust gain.[9] We accordingly must determine what loss, if any, was caused by Choi's crimes, and we begin by considering how damages for fraud would be assessed in a civil fraud case.

In a civil case, a plaintiff who has been injured by fraud is entitled to general damages, which typically are measured in accordance with either the "benefit of the bargain" rule or the "out of pocket" rule.[10] Under the "benefit of the bargain" rule, a plaintiff is entitled to recover the difference between the actual value of the purchase

---

[7] *Ned v. State*, 119 P.3d 438, 446 (Alaska App. 2005) (quoting *Lonis v. State*, 998 P.2d 441, 447 n.18 (Alaska App. 2000)).

[8] *Peterson v. Anchorage*, 500 P.3d 314, 318 (Alaska App. 2021); *see also* AS 12.55.045(a) (authorizing restitution as a direct component of a sentence); AS 12.55.100(a)(2)(B) (authorizing restitution as a condition of probation).

[9] *Welsh v. State*, 314 P.3d 566, 568 (Alaska App. 2013).

[10] *Turnbull v. LaRose*, 702 P.2d 1331, 1335-36 (Alaska 1985) (citing Dan B. Dobbs, *Handbook on the Law of Remedies* § 9.2, at 595 (1973)); Dan B. Dobbs & Caprice L. Roberts, *Law of Remedies: Damages, Equity, Restitution* § 9.1(1), at 721-24 (3d ed. 2018) [hereinafter *Dobbs on Remedies* (2018)].

and the value the purchase would have had if the representations had, in fact, been true.[11] And under the "out of pocket" rule, a plaintiff will recover "the price paid for property [the plaintiff] was induced to buy as a result of the misrepresentation, less the market value of the property."[12] Thus, under both of these approaches for valuing damages, an injured party will recover the actual damages or loss arising from the defendant's conduct, rather than the amount of the defendant's unjust gain.[13] We accordingly adopt these rules as an appropriate method of determining the amount of restitution that should be awarded when a defendant is convicted of medical assistance fraud.

We next consider how these rules apply to the present case. Under either method, DHSS is entitled to damages in the amount of the difference between what DHSS was induced to pay to Choi as a result of his misrepresentations (*i.e.*, the value of the service that Choi promised to provide, had his misrepresentations been true), and the market value of the work Choi performed (*i.e.*, the market value of Choi's work if he had

---

[11]   *Turnbull*, 702 P.2d at 1336; *accord Dobbs on Remedies* (2018) § 9.1(1), at 722-24; *see also* Restatement (Second) of Torts § 549(2) (1977) ("The recipient of a fraudulent misrepresentation in a business transaction is also entitled to recover additional damages sufficient to give him the benefit of his contract with the maker, if these damages are proved with reasonable certainty."); *Beaux v. Jacob*, 30 P.3d 90, 97 (Alaska 2001) ("In negligent nondisclosure cases, an appropriate measure of damages is the 'cost of putting the property in the condition that would bring it into conformity with the value of the property as it was represented.'" (quoting *Carpenter v. Donohoe*, 388 P.2d 399, 401 (Colo. 1964))).

[12]   *Dobbs on Remedies* (2018) § 9.1(1), at 721; *see also* Restatement (Second) of Torts § 549(1)(a) ("The recipient of a fraudulent misrepresentation is entitled to recover as damages in an action of deceit against the maker the pecuniary loss to him of which the misrepresentation is a legal cause, including . . . the difference between the value of what he has received in the transaction and its purchase price or other value given for it.").

[13]   *See Welsh*, 314 P.3d at 568.

disclosed that he had been convicted of a barrier crime and that it was he, and not his wife, who had done the work listed in some of the timesheets).

Choi contends that the services he provided to the Medicaid beneficiaries had value, and that the court should reduce his restitution obligation by an amount equal to the value of these services. He notes that the State did not establish that he failed to provide any of the personal care services that he was paid to provide, nor did it present any evidence that the services he provided were deficient in any way.

But Choi's argument misidentifies the victim of the crimes for which he was convicted. Choi pleaded guilty to defrauding DHSS by signing his wife's name on timesheets for work he performed and by submitting timesheets when he was barred from receiving Medicaid payments due to his prior criminal conviction. Thus, it is DHSS, not the Medicaid beneficiaries, who is the victim of Choi's offenses.

As we have explained, an injured party receives "value" in the amount that it would have paid for services had it known the truth about the defendant's fraudulent representations. Thus, DHSS receives "value" when Medicaid recipients receive legitimate health care services for which DHSS would pay but for the defendant's fraud. If DHSS would have authorized payment for the services that Choi provided to his clients but for his fraudulent conduct, then the amount DHSS paid is the fair market value of those services. By contrast, if DHSS would not have paid Choi for the services he rendered if he had submitted accurate, non-fraudulent claims, then Choi is entitled to no such credit. Because there is no dispute that DHSS would not have paid for the services performed by Choi if Choi had disclosed his conviction for a barrier crime, DHSS received no value for Choi's work.

The Fifth Circuit Court of Appeals adopted a similar reasoning in *United States v. Mahmood*, a Medicare fraud case.[14] In that case, the court reasoned that Medicare receives value "when its beneficiaries receive legitimate health care services for which Medicare would pay but for a fraud."[15] Thus, if Medicare would have paid for the healthcare services that were provided but for a defendant's fraud, the defendant is entitled to credit for the fair market value of the services. But if Medicare would not have paid for the services, then the defendant is entitled to no such credit.

This holding is consistent with the Fifth Circuit's previous Medicare fraud opinions in *United States v. Klein*,[16] a case in which the defendant's services had some value to Medicare, and *United States v. Jones*,[17] a case in which the defendants' services had no value to Medicare.

In *Klein*, the defendant was a physician who committed health care fraud by submitting claims for in-office administration of certain medications when, in fact, patients were self-administering those medications at home. In concluding that the services provided by the defendant had some value to Medicare, the Fifth Circuit noted that, even though the defendant fraudulently billed for services related to the medications, neither party disputed that the patients needed those medications or that Medicare would have paid for the medications had the defendant not engaged in the

---

[14] *United States v. Mahmood*, 820 F.3d 177 (5th Cir. 2016).

[15] *Id.* at 193.

[16] *United States v. Klein*, 543 F.3d 206, 213-15 (5th Cir. 2008).

[17] *United States v. Jones*, 664 F.3d 966, 984 (5th Cir. 2011).

fraud. Thus, the defendant was entitled to credit for the value of the service he provided.[18]

By contrast, in *Jones*, the defendants were part of a scheme in which unauthorized personnel were used to perform physical rehabilitation on Medicare patients. They billed Medicare for providing the service, fraudulently misrepresenting that licensed professionals had rendered the services. The Fifth Circuit determined, as a preliminary matter, that Medicare, not the defendants' patients, was the victim of the fraud for purposes of obtaining a fair-market-value-credit. The court then concluded that Medicare pays only for treatments that meets its standards and that it received no value from the unlicensed treatments. As a result, the defendants were not entitled to any credit for the services they provided.[19]

The Ninth Circuit Court of Appeals reached a similar conclusion in *United States v. Hunter*.[20] The court explained that the amount of restitution is limited to the victim's "actual losses," which is "determined by comparing what actually happened with what would have happened if the defendant had acted lawfully."[21] In that case, the defendant stole the identity of a registered nurse and used it to obtain a nursing license. She used the fake license to obtain employment as a school nurse hired by the Fairbanks North Star Borough and later as a nurse working for the United States Department of Labor. Concluding that neither the Department of Labor nor the Borough would have

---

[18]  *Klein*, 543 F.3d at 215.

[19]  *Jones*, 664 F.3d at 984.

[20]  *United States v. Hunter*, 618 F.3d 1062 (9th Cir. 2010).

[21]  *Id.* at 1064 (quoting *United States v. Bussell*, 504 F.3d 956, 964 (9th Cir. 2007)).

paid for the defendant's services but for her fraud, the court declined to provide a credit for any of the services the defendant actually performed.[22]

These Fifth and Ninth Circuit opinions are consistent with the method for determining DHSS's loss we explained above. In this case, if DHSS would have paid for the medical services but for the defendant's fraud, then the defendant is entitled to credit for the services. But if, knowing the truth, DHSS would not have paid for the services, then the defendant is not entitled to a credit.

We accordingly conclude that DHSS is entitled to a restitution award that is equivalent to the difference between what DHSS was induced to pay as a result of Choi's misrepresentations, which was $62,043.77, and the market value of the work Choi performed (*i.e.*, the market value of Choi's work if he had disclosed that he had been convicted of a barrier crime and that it was he, and not his wife, who had done the work listed in some of the timesheets).

Although Choi's work may have had the same value to the Medicaid recipients regardless of his conviction for a barrier crime, the same cannot be said of the value he provided to DHSS. Indeed, it is undisputed that, if Choi had been honest that it was he who was performing the treatment, and that he had been convicted of a barrier crime, DHSS would not have paid anything at all for Choi's work. Choi's services, like

---

[22]    The Ninth Circuit noted that this conclusion "accords with traditional principles of contract law," which provide that "[w]hen an individual fails to comply with licensing requirements aimed at protecting health and safety rather than merely raising revenue, that individual can maintain 'no action for the promised compensation or for quantum meruit.'" *Id.* at 1065 (citations omitted). Thus, the court considered the defendant's request to give her a credit value of services she provided to be akin to an action to recover an unjust gain, and it declined to allow this.

those provided by the defendants in *Jones*,[23] had no value to DHSS because he did not meet the standards for providing the services.

We therefore conclude that the superior court did not err in awarding restitution in the full amount DHSS paid C Care.[24]

*Why the superior court's failure to require the State to prove whether DHSS had already been reimbursed for the losses resulting from Choi's conduct was not plain error*

Choi contends that the superior court should have required the State to present evidence as to how much money DHSS had already recovered from C Care or its owner for these same payments, and that the court should then have offset the restitution award by that amount. As the State points out, Choi did not raise this argument in the superior court and he has only cursorily briefed the argument on appeal. He therefore must show plain error.[25]

When co-defendants are ordered to pay restitution for the same loss, a trial court should ordinarily indicate on the restitution judgments that the restitution is owed

---

[23] *Jones*, 664 F.3d at 984.

[24] Under these rules, a defendant who fraudulently bills Medicaid for services in excess of those the defendant actually provided will be given credit for the value of the legitimate services provided, as long as the defendant was legally eligible to receive Medicaid payments. Similarly, if a defendant fraudulently obtains payment for a higher level of service than what was provided (*e.g.*, as in *Klein*, for in-office administration of medication rather than self-administration of medication), the defendant is entitled to credit for the legitimate services they provided, as long as they were eligible for payment. *United States v. Klein*, 543 F.3d 206, 213-15 (5th Cir. 2008).

[25] *Adams v. State*, 261 P.3d 758, 773 (Alaska 2011).

jointly and severally.[26]   But in this case, Choi and C Care were not charged as co-defendants.  And the sole witness to testify at the restitution hearing did not know how much money DHSS had recovered from C Care or its owner, nor whether the money recovered was for the "same issues" that caused the economic harm in Choi's case.  Thus, there was no evidence presented by either party to establish whether C Care or its owner had made payments to DHSS for the loss caused by Choi's conduct.

Choi nevertheless contends that the superior court should have, *sua sponte*, ordered the State to present evidence of any payments DHSS may have received as compensation for the economic harm caused by Choi's conduct.  But Choi never objected on this ground, and on appeal he provides no authority for his position.  We note that, under Alaska Criminal Rule 16(b)(3), the State was obligated to disclose to Choi information as to whether payments toward the same loss had already been made by another person or entity, or that a court had ordered another person or entity to make payments for the same loss.[27]  Thus, in the absence of any objection at the hearing, the court could assume that the State had complied with its disclosure requirements and no payments had been made.  Moreover, as the State points out, Choi still may seek subrogation against C Care or its owner.  For these reasons, we reject Choi's claim of plain error.

---

[26]   *See Sowinski v. Walker*, 198 P.3d 1134, 1151 (Alaska 2008) (the doctrine of joint and several liability provides a guarantee of full compensation for a plaintiff and emphasizes making the plaintiff whole); *Petrolane Inc. v. Robles*, 154 P.3d 1014, 1019-20 (Alaska 2007) (joint and several liability guards against double recovery and ensures that "overlapping remedies" do not become multiple remedies).

[27]   Alaska R. Crim. P. 16(b)(3) (requiring the prosecuting attorney to disclose to defense counsel any material or information within the prosecuting attorney's possession or control which would tend to reduce the accused's punishment).

*Conclusion*

We AFFIRM the judgment of the superior court.