IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40121-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ZACHARY P. BERGSTROM, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — After the Washington Supreme Court's decision in *State v. Blake*,[1]

Zachary Bergstrom was resentenced. The following year, the State filed a CrR 7.8(b)(1)

motion to again resentence Bergstrom, arguing that the judgment and sentence was

facially invalid because his offender score was incorrect and because the mandatory term

of community custody had not been imposed. At this same time, Bergstrom was also

permitted to file a pro se collateral attack in which Bergstrom moved to vacate his

judgment and sentence, raising several arguments. After both motions were transferred

to the court of appeals as personal restraint petitions (PRPs), they were remanded back

---

[1] 197 Wn.2d 170, 481 P.3d 521 (2021).

for either an evidentiary hearing or to clarify the transfer because the trial court had not applied the correct standard for transfer.

At a hearing on both the State's motion and Bergstrom's motion, Bergstrom orally moved to remove his assigned counsel, Spokane County Public Defender Summer Rife. The court denied the motion, concluding that Bergstrom failed to demonstrate a conflict or inadequate representation. Bergstrom appeals, arguing the court abused its discretion when it denied his motion to substitute counsel. In particular, he contends there was a complete breakdown in communication with his attorney, creating a conflict. We disagree and affirm.

## BACKGROUND

In October 2018, Zachary Bergstrom was sentenced on convictions for second degree unlawful possession of a firearm, possession of a controlled substance with intent to deliver, and simple possession of a controlled substance. After Bergstrom appealed, the State conceded that his sentence exceeded the statutory maximum. Bergstrom was resentenced in 2019 to concurrent sentences totaling 120 months.

In 2021, following *Blake*, Bergstrom again was resentenced after his conviction for simple possession was vacated. Based on an offender score of 4, the court imposed a sentence of 104 months of confinement.

In 2022, the State filed a CrR 7.8 motion for resentencing, arguing the judgment and sentence was facially invalid because the offender score was incorrect and the

2

mandatory term of community custody had not been imposed. Brooke Foley was appointed to represent Bergstrom on the State's motion. The court also allowed Bergstrom to file a pro se CrR 7.8 collateral attack through his attorney. In his motion, Bergstrom sought vacation of his judgment.

Several months later, the superior court entered an order transferring the State's and Bergstrom's CrR 7.8 motions to the court of appeals "because there were no new facts for the trial court to consider." Clerk's Papers at 174. The court of appeals promptly remanded the case back to the trial court to apply the correct standard under CrR 7.8(c)(2).

On remand, the superior court determined that it would decide the substantive issues raised in the CrR 7.8 motions, and the parties agreed. The State then filed a response to Bergstrom's pro se motion. Rife then filed a memorandum disputing the State's motion for resentencing.

On the day scheduled to consider the motion to vacate the Judgment and Sentence, Rife advised the court that Bergstrom wanted her removed as his attorney. Bergstrom himself told the court that the basis for his motion was his dissatisfaction with Rife's representation, particularly "as to the PRP". He also expressed frustration with his inability to contact her and claimed her response to the State's brief took only 48 hours to prepare. Bergstrom asserted that Rife was ineffective and requested he be appointed "a different subpar attorney or a subpar attorney" that was "outside the Spokane [County]

Public Defender's Office." Rep. of Proc. (RP) at 47. The hearing was continued so that

a written motion could be presented.

In the interim, the State filed a memorandum noting that Bergstrom was not

entitled to legal representation on his own CrR 7.8 motion and Rife's representation was

limited to responding to the State's motion for resentencing.

When the parties reconvened to address Bergstrom's motion for a new attorney,

the court clarified that Rife was assigned to represent Bergstrom on the resentencing

issue and not on his CrR 7.8 motion. Again, referring to his CrR 7.8 motion, Bergstrom

argued that the State had responded and Rife did not submit a reply brief. He complained

that Rife was unresponsive and would not take his calls until three days before the last

hearing, even though the court said she represented him in that case. In addition,

Bergstrom protested that Rife made no "effort in putting forth an argument for . . . a

downward sentence." Finally, he stated that

> [s]he took what I said to her, in a very fiery conversation that did not end
> well, and 48 hours before the hearing, she muddled it together and then a
> two-page attachment that she stapled to the prosecution's briefing. She
> made no effort at proper, adequate representation. She did nothing to make
> any kind of argument or anything on my behalf.
>
> . . . .
>
> I expect a modicum of investment and representation on behalf of those
> who are supposed to be representing me, and she did nothing, and she
> didn't even take my calls. I can have my brother sign affidavits to this
> effect because I had him three-way call her, in which she accepted this call
> and told me to call back at a specific time, and then still did not take my
> call. So, you know, I mean, the communication process between myself

and my so-called representation is broken down at this point, that I believe it's beyond inadequate.

RP at 53-55.

Bergstrom then went on to explain that he had filed state bar complaints against his trial counsel and filed a complaint against the prosecutor as well. For this reason, he argued that he had "a standing conflict of interest" because of the bar complaints against prior attorneys at the Spokane Public Defender's Office. After Bergstrom finished, Rife then explained her perspective of the representation:

> About the two matters before the Court, there's a motion Mr. Bergstrom filed through [his] attorney Brooke Foley, a 7.8 motion, and then there's this *Blake* resentencing issue. I also recall at the last hearing, Your Honor instructing me to provide representation to Mr. Bergstrom. I did look at both of the issues, spoke with my supervisors, considered the scope of what I was here to do. I was appointed to represent Mr. Bergstrom in his *Blake* resentencing because I am—at the time, I was the attorney assigned to *Blake* matters. That's no longer the case. Mr. Harget is now doing all of the *Blake*-related cases. So with regard to the scope of my representation, it would be only related to *Blake*.

> I did look at the motion that was filed through Brooke by Mr. Bergstrom and discussed that with him and discussed it with [my] colleagues. And it's my position that it's not only beyond the scope for what I was appointed for, but there are no arguments I can make to the Court with regard to that. However, I am prepared to discuss with Your Honor, Rule 7.8, and the analysis that you might need to undergo if we do address that motion. I do believe there is an analysis under that rule that needs to be undertaken.

> I'm also prepared to proceed on the *Blake* resentencing case, Your Honor. I do feel it's important to make a brief record. After being appointed to this case in—just prior to the July 19th hearing, I have spent at least 22 hours, Your Honor, on the case. I've had seven meetings with Mr. Bergstrom, either in person at the jail or on the phone. I've written him a

5

letter updating him on the research that I've done in his case, not only to get to know the history of his case, but also to contemplate what options he had at the *Blake* resentencing and what positions we could take.

So I've done a lot of—I've spent a lot of times in the seven conversations, some of those conversations lasted over an hour, and I have been excessively patient with Mr. Bergstrom and done my best to help him and represent him to the best of my ability. I don't know that we see eye to eye on all of the conclusions that I've arrived at and so we are here today. And I think Mr. Bergstrom may be correct that communication has broken down to an extent, but the idea that I haven't done anything is not accurate, and I did want to make that record, Your Honor.

RP at 65-66.

After hearing from Rife, the court then inquired about what conflict of interest Bergstrom believed he had because the record did not reflect a conflict. The court added that if the conflict is the fact he did not prevail at trial, then that is not a conflict of interest. Bergstrom responded, again asserting that if he had state bar complaints against attorneys in a particular firm, then he had a standing conflict of interest. The court noted that this appeared to be a tactic.

The court denied Bergstrom's motion to remove Rife as his attorney and to appoint a new attorney:

[W]hile you do have the right to have counsel appointed to complete this case, you don't have the right to choose who you get. You've indicated that there is a conflict. What you've put on the record is the conflict of you filing bar complaints against Mr. Charbonneau, against I believe Ms. Hess. You indicated you're going to file one against Ms. Rife, to me, that's a tactic. You're doing that so that you get different counsel, one that you want and one that you think will tell you something different.

6

. . . .

Disagreements with regards to strategy, as to how to approach or argue what is before the Court, is not a basis to remove an attorney. A general loss of confidence technically isn't even enough, and case law talks about the fact that you're not entitled to have a rapport with counsel. While you are entitled to counsel, you're not entitled to choose which counsel, nor entitled to manipulate what counsel you get by filing bar complaints.

Today's order is going to be two-fold: One, that I'm denying your request for new counsel in the resentencing matter; and two, that I'm bifurcating the 7.8 motion. Ms. Rife is not representing you on the 7.8 matter. Once we get the resentencing addressed and taken care of, I will sign an order that removes her, allows her to withdraw from the case. You will have your appeal rights that will be read to you at that time, you will have full appeal rights, but the 7.8 motion will be bifurcated from the resentencing issue at this point in time.

RP at 71-72.

In November 2023, Bergstrom was resentenced and received 108 months plus 12 months of community custody.

Bergstrom appeals.

## ANALYSIS

The only issue raised in this appeal is whether the trial court abused its discretion by denying Bergstrom's motion for new counsel. Specifically, he contends a complete breakdown of communication with counsel existed in his case, amounting to a conflict of interest. We disagree.

Under the Sixth Amendment to the United States Constitution, a criminal defendant does not have an absolute right to choose the counsel to represent them. *State*

*v. Stenson*, 132 Wn.2d 668, 733, 940 P.2d 1239 (1997). To warrant a substitution of counsel, a defendant must demonstrate that "good cause" exists, such as (1) a conflict of interest, (2) an irreconcilable conflict, or (3) a complete breakdown in communication. *State v. Davis*, 3 Wn. App. 2d 763, 790, 418 P.3d 199 (2018). This court reviews a trial court's denial of a motion to substitute counsel for an abuse of discretion. *State v. Varga*, 151 Wn.2d 179, 200, 86 P.3d 139 (2004).

In reviewing a denial of a motion to substitute new counsel, this court considers "(1) the extent of the conflict between the accused and his attorney, (2) the adequacy of the trial court's inquiry into the conflict, and (3) the timeliness of the motion." *State v. Harris*, 181 Wn. App. 969, 977, 327 P.3d 1276 (2014). Here, the parties do not dispute the adequacy of the court's inquiry or the timeliness of the motion, so we focus our attention on the court's finding with respect to the extent and nature of the breakdown in communication and what effect, if any, the breakdown had on the representation that Bergstrom received. *State v. Thompson*, 169 Wn. App. 436, 457, 290 P.3d 996 (2012).

To demonstrate a conflict with communication, it "is not enough that a defendant has lost confidence or trust in his attorney." *Id*. Instead, the defendant and his counsel must be "'at such odds as to prevent presentation of an adequate defense.'" *Id*. (quoting *State v. Schaller*, 143 Wn. App. 258, 268, 177 P.3d 1139 (2007)). Furthermore, it is well settled that a defendant cannot merely request a substitution of counsel on the basis of

communication "'where he simply refuses to cooperate with his attorneys.'" *Id*. at 458 (quoting *Schaller*, 143 Wn. App. at 271))

Here, Bergstrom's main argument is that he had difficulty contacting his attorney and believed she was providing ineffective representation. He cites *State v. Nguyen*, to support the proposition that a serious breakdown in communication can result in an inadequate defense and that even a disagreement over strategy can constitute a conflict. 262 F.3d 998, 1003 (9th Cir. 2001). Bergstrom's reliance on *Nguyen* fails for several reasons.

First, although persuasive authority, federal cases are not binding on this court. *Nguyen v. Quality Loan Service Corp*., 33 Wn. App. 2d 602, 606, 562 P.3d 384 (2025) ("[F]ederal court decisions are guiding, not binding, authority."). Furthermore, Bergstrom fails to compare or analyze the facts in *Nguyen* with his case. Third, even if Bergstrom sufficiently briefed a comparison of *Nguyen* to the facts of his case, it would still fail. In that case, by the time of trial, defense counsel acknowledged that Nguyen would not speak with him anymore and as a result, could not confer with counsel about trial strategy or additional evidence, or receive an explanation of the proceedings. *Nguyen*, 262 F.3d at 1004.

Here, on the other hand, Rife explained the extensive work she had dedicated to Bergstrom's case including her communications with Bergstrom. Rife and Bergstrom communicated several times and contemplated options for resentencing and positions he

could take. Although she agreed the communication was broken to an extent, to say she had not done anything was a gross exaggeration. The record supports the court's finding that there was not a complete breakdown of communication.

Finally, Bergstrom claims there was a conflict with his attorney because he expected to file a bar complaint. The trial court found that Bergstrom's history of filing such complaints was tactical and manipulative. Bergstrom does not challenge this finding.

The trial court did not abuse its discretion when it denied Bergstrom's motion to substitute counsel.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, A.C.J.

WE CONCUR:

_____
Fearing, J.

_____
Cooney, J.

10